670 P.2d 725

Robert A. BROWN and Mary Ellen Brown, husband and wife, and Robert A. Brown Enterprises, Inc. d/b/a Cameo Label and Printing Company and Progressive Rent-A-Car, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, and The Honorable Morris Rozar, a Judge thereof, Respondent Judge,

CONTINENTAL NATIONAL ASSURANCE, INC., (CNA), a corporation, Continental Casualty Company, an Illinois corporation, James L. Weidner and Jane Doe Weidner, husband and wife, Philip Markis and Jane Doe Markis, husband and wife, W.A. DeWitt and Jane Doe DeWitt, husband and wife, Lloyd Foote and Jane Doe Foote, husband and wife, Don Brown and Jane Doe Brown, husband and wife, and John Doe, real parties in interest, Respondent Real Parties in Interest.

No. 16492–SA.

Supreme Court of Arizona,
En Banc.

Sept. 26, 1983.

Patten, Montague & Arnett by Wayne C. Arnett, Tempe, for petitioners.

Gallagher & Kennedy by Michael K. Kennedy, Michael J. Ahearn, Phoenix, for real parties in interest.

Langerman, Begam, Lewis & Marks by Samuel Langerman and William B. Revis, Phoenix, for amicus curiae Arizona Trial Lawyers Ass'n.

FELDMAN, Justice.

Petitioners, Robert A. Brown and Mary Ellen Brown and Robert A. Brown Enterprises, Inc. (Brown), bring this special action against respondent insurers (Continental) and several of their employees, alleging that the trial judge abused his discretion and acted contrary to law in denying Brown's motion to compel production. Having concluded that the petition presents important issues of first impression in this state and that remedy by appeal is inadequate, we accepted jurisdiction. Ariz. Const. art. 6, § 5, and Ariz.R.Sp.Act. 4, 17A A.R.S.

The action arose out of a fire loss to Brown's businesses, Cameo Label and Printing Company and Progressive Rent-a-Car, on August 16, 1980. Brown was insured by Continental for fire damage and various extended coverages. After some negotiation, the physical damage loss was paid, but the company refused to pay the claim based on business interruption, loss of accounts receivable and loss of valuable papers (referred to hereafter as the "loss of earnings claim"). The issues pertaining to the loss of earnings claim were arbitrated by agreement of the parties, but Brown refused to accept the award of the arbitrator. Brown then filed an action in superior court on June 30, 1982, alleging that Continental and its agents had acted in bad faith and breached the implied covenant of good faith and fair dealing contained in the insurance policies which covered Brown's property.[1] The bad-faith allegations pertained only to the handling of Brown's claim for loss of earnings.

On the same day the complaint was filed, Brown served Continental and the other defendants with a request for production pursuant to Ariz.R.Civ.P. 34.[2] The portion of the request at issue in this case sought production of the entire claims file compiled by Continental in handling both the physical damages and loss of earnings claim.[3]

---

1. Since this is a special action proceeding, we are not furnished with the entire record below. We have only those portions of the record which the parties chose to attach as exhibits to the pleadings filed in this court. The part of the record which we do have does not indicate whether the loss of earnings claim has been terminated. It is possible, but unclear from our record, that Brown is maintaining simultaneous actions or counts for recovery of the loss of earnings coverage under the policy and for damages for the insurer's alleged bad faith in failing to pay the claim. Should the former terminate adversely to Brown, one would assume that the bad-faith claim must fall. Obviously, there are many problems involved in allowing a claimant simultaneously to pursue both a claim under the coverage provided by the policy and a bad-faith claim based upon the insurer's refusal to pay the policy claim. One could plausibly argue that the law should not allow such simultaneous actions and that a bad-faith claim can be pursued only after disposition of the underlying policy claim. Neither party has raised this issue nor provided us with the facts necessary to determine whether it exists. Accordingly, we do not address the issue and assume that Brown may maintain the bad-faith claim which, for all our record discloses, is the only claim extant.

2. The Rules of Civil Procedure will hereinafter be referred to as "Rule ____."

3. The items sought were the following:

3. The *complete* and entire claims file and other documents on the Plaintiffs, including, but not limited to, the following:

(a) The file folder or folders themselves;

(b) All inter-office memoranda or other forms of written communication to or from any employee of Defendants relating to the initial processing of the Plaintiffs' claims when Defendants first received said claims;

(c) All inter-office memoranda or other forms of written communication to or from any employee of Defendants relating to the continued processing or denial of the Plaintiffs' claims;

(d) All written communication from Plaintiffs to Defendants, including all proof of loss forms and claim forms;

(e) All written communications between Defendants and any third party concerning the processing, acceptance or denial of the Plaintiffs' claims;

(f) All medical and investigative reports concerning Plaintiffs and the Plaintiffs' claims, and all written communications between Defendants and any third party concerning said report or reports;

(g) All written communications from Defendants to Plaintiffs concerning processing and denial of the Plaintiffs' claims;

(h) All photographs, motion pictures, tape recordings, or other products of investigation concerning Plaintiffs taken by or on behalf of Defendants, relating to the processing or denial of the claims listed above;

Continental objected to production of the file, claiming (1) the portions of the file relating to the property loss claims were irrelevant; (2) much of the file was prepared in anticipation of litigation and was therefore qualifiedly protected from discovery; (3) the file also contained the mental impressions, conclusions, opinions and legal theories of the insurer's agents and attorneys which were absolutely immune from discovery; and (4) the reports and correspondence of the certified public accountants were privileged and nondiscoverable pursuant to A.R.S. § 32–749.

Brown moved for an order compelling production of the file. The trial judge ordered Continental to submit the entire claims file for *in camera* inspection by the court, along with an itemization of the documents and a statement explaining Continental's position with respect to each item. The court also ordered Brown to submit an itemization of documents sought from the claims file, along with a statement of legal authority supporting Brown's position on each of those items. The Browns reported to the court that they were unable to submit such a document because it was not possible for them to determine which documents would be helpful by consulting an inventory prepared by Continental.[4]

After reviewing the files, the trial court denied the motion to compel in its entirety, stating that the court had inspected the three volumes of the claims file "page by page and line by line" and had concluded that a substantial portion of the file contained items readily available to Brown and the remainder of the file contained items "which the court feels are not discoverable."

Since the request for production had included all written communications between Brown and Continental, the trial court undoubtedly presumed that Brown had copies of such material and was well within its discretion in denying production of those items. Rules 26(c) and 37(a). It is conceded, however, that the files also contained a large number of items to which Brown would have no access except by utilization of the discovery rules. With respect to these items, the trial court failed to state the reason for denying production, except for the comment that the court "feels" the material was "not discoverable." Of course, this tells us nothing with respect to the grounds for denying production. Since the trial court did not specify the reasons for finding that the requested material was not discoverable, we must presume that the judge denied the motion to compel discovery on one or all of the grounds asserted by Continental. Continental has not suggested to us that the trial court based its decision on any ground other than those which it had raised.[5] Throughout our review, we are mindful of the principle that in matters of discovery a trial court has broad discretion which will not be disturbed absent a showing of abuse. *Cornet Stores v. Superior Court,* 108 Ariz. 84, 86, 492 P.2d 1191, 1193 (1972); *Jackson v. American Credit Bureau, Inc.,* 23 Ariz.App. 199, 203,

---

(i) All other written documents pertaining to the processing of the above claims in the possession of Defendant;

(j) All documents in the claims file, including telephone messages, claim worksheets, copies of checks or drafts, memoranda of telephone calls or conferences, legal or medical researches, etc.;

(k) This request includes evidence of written communication between the Defendants and their attorneys, pursuant to United States Auto Ass'n. v. Werley, 526 P.2d 28 (Alaska 1974);

(*l*) If there are files kept by more than one office or department of the Defendants (i.e., home office and regional claims office), this request is for *all* such files.

4. A portion of the inventory prepared by Continental follows and illustrates Brown's difficulty:

22. Memo from Mr. Markis to Mr. Trudell, dated 1/18/82.

23. Memo from Mr. Trudell to Mr. Foote, dated 2/1/82.

24. Memo from Mr. Markis to Mr. Trudell, dated 2/2/82.

5. Our review is made more difficult by the absence of a statement of the specific grounds for the court's action. In the future, we encourage trial judges to assist reviewing courts by stating on the record the specific reasons for their actions.

531 P.2d 932, 936 (1975). The discretion, however, is a legal discretion. It includes the right to decide controverted factual issues, to draw inferences where conflicting inferences are possible and to weigh competing interests. It does not include the privilege of incorrect application of law or a decision predicated upon irrational bases. *Richas v. Superior Court of Arizona,* 133 Ariz. 512, 652 P.2d 1035 (1982).

## RELEVANCY

Brown requested production of the "complete and entire claims file" compiled by Continental concerning Brown's policies. A portion of this file deals with the property damage claims. Continental argued that since the property damage claims were satisfied as of October 30, 1980, information pertaining to those claims was irrelevant to a bad-faith action based on Continental's dealings with the loss of earnings claim.

▮ Rule 26(b)(1) permits discovery of information "relevant to the subject matter involved in the pending action." The requirement of relevancy at the discovery stage is more loosely construed than that required at trial. For discovery purposes, the information sought need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id.; Cornet Stores,* 108 Ariz. at 86–87, 492 P.2d at 1193–94; 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2008, at 41 (1970).

▮ In this case, the trial court conducted an *in camera* inspection of the claims file after Continental provided an itemization of the documents and the reasons it believed some of them were irrelevant. This procedure placed the trial judge in the best position to determine questions of relevancy. *See Jolly v. Superior Court of Pinal County,* 112 Ariz. 186, 192, 540 P.2d 658, 664 (1975). While it is possible, if not probable, that information relating to the property damage and loss claims could lead to the discovery of admissible evidence in the bad-faith action concerning the loss of earnings claim, we were not provided access to the material in question and must defer to the trial court. Accordingly, we cannot find that the trial court abused its discretion in denying production of that portion of the claims file relating to the property damage and loss claims.

Continental did not argue that the relevancy objection was applicable to the portion of the claims file dealing with the loss of earnings claim. Further, as discussed below, it is apparent that the items in the file which deal with that portion of the claim are relevant. We proceed, therefore, to examine the propriety of the trial court's order relating to these portions of the file in light of the other objections raised by Continental.

## TRIAL PREPARATION MATERIALS—QUALIFIED IMMUNITY

The major objection which Continental raised to production was that much of the files consisted of "material prepared in anticipation of litigation." Continental argued that after August 21, 1981, its dealings with Brown over the loss of earnings question made the possibility of litigation clear. Thereafter, Continental argues, all subsequent material in the claims file was "prepared in anticipation of litigation." Continental argues that such material is entitled to a qualified immunity from discovery. Rule 26(b)(3) does grant such an immunity; it provides that discovery of relevant documents and tangible things which have been "prepared in anticipation of litigation or for trial" may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

We have not before had occasion to formulate the test to determine when materials are "prepared in anticipation of litigation" and thus entitled to the protection of Rule 26(b)(3). One of the leading texts states the problem as follows:

Rule 26(b)(3) is entirely in accord with the prior case law in denying work prod-

uct immunity to documents that were not "prepared in anticipation of litigation or for trial." Some cases have attributed significance to whether a document was obtained before or after litigation was commenced, but this cannot be sound. Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

Wright & Miller, *supra,* § 2024, at 197–99 (footnotes omitted).

This formulation does more to state the problem than to solve it. Attempts to compel production of an insurance company's claims file often present situations where the principles favoring work product protection and discovery of all relevant information conflict. For example, while investigation of claims is an integral part of an insurance company's business, litigation is often likely when these investigations are performed. Thus, courts have taken different approaches in determining when claims investigation material prepared by an insurance company will be characterized as that prepared in the ordinary course of business and therefore freely discoverable, or whether prepared in anticipation of litigation thus protected by Rule 26(b)(3). *Id.*

One line of authority takes the position that unless the insurer's investigation has been performed at the request or under the direction of counsel, the investigation is conclusively presumed to have been made in the ordinary course of business and not in anticipation of litigation. *See McDougall v. Dunn,* 468 F.2d 468 (4th Cir.1972); *Atlanta Coca-Cola Bottling Co. v. Transamerica Insurance Co.,* 61 F.R.D. 115 (N.D.Ga.1972); *Thomas Organ Co. v. Jadranska Slobodna*

*Plovidba,* 54 F.R.D. 367 (N.D.Ill.1972); *Henry Enterprises, Inc. v. Smith,* 225 Kan. 615, 592 P.2d 915 (1979). The court in *Atlanta Coca-Cola Bottling Co., supra,* explained the rationale of this approach:

[T]he evaluation of claims of its policyholders is the regular, ordinary and principal business of defendant insurance company. Most of such claims result in payment by the defendant; it can hardly be said that the evaluation of a routine claim from a policyholder is undertaken in anticipation of litigation, even though litigation often does result from denial of a claim. The obviously incongruous result of the position urged by defendant would be that the major part of the files of an insurance company would be insulated from discovery.

61 F.R.D. at 118.

■ Correctly, we believe, this approach has been criticized because the plain language of Rule 26(b)(3) rejects the proposition that only materials prepared or requested *by counsel* are entitled to protection from discovery. The rule protects materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) . . . ." Therefore, the 'direction of counsel approach' ignores the clear import of the rule and cannot be supported. *See Spaulding v. Denton,* 68 F.R.D. 342, 345 (D.Del.1975); 4 J. Moore, *Moore's Federal Practice* ¶ 26.- 64[3] (Supp.1982–83).

Another view is taken by those courts which hold that all statements and information secured by an insurance company after an occurrence which might give rise to a claim against it or its insured are made in anticipation of litigation. *See Almaguer v. Chicago, Rock Island & Pacific Railroad Co.,* 55 F.R.D. 147 (D.Neb.1972); *Fireman's Fund Insurance Co. v. McAlpine,* 391 A.2d 84 (R.I.1978); *see also Hamilton v. Canal Barge Co.,* 395 F.Supp. 975 (E.D.La.1974). This absolute approach was explained in *Fireman's Fund Insurance Co., supra:*

In our litigious society, when an insured reports to his insurer that he has been involved in an incident involving another person, the insurer can reasonably anticipate that some action will be taken by the other party. The seeds of prospective litigation have been sown, and the prudent party, anticipating this fact, will begin to prepare his case.... Although a claim may be settled short of the instigation of legal action, there is an ever-present possibility of a claim's ending in litigation. The recognition of this possibility provides, in any given case, the impetus for the insurer to garner information regarding the circumstances of a claim.

391 A.2d at 89–90.

■ We find this view equally unsatisfactory. The fact that an event has occurred which may require an insurance company to provide payments under its contract with an insured will certainly not *always* transform an insurance company's activities into preparation for litigation. This is particularly true where, as here, the claim asserted is not a liability claim against a third party's insurer, but rather a casualty claim against the claimant's own insurer. To adopt such an approach would undoubtedly give too broad an application of Rule 26(b)(3), simply because in many circumstances, although claims are expected, litigation is only problematical. *See Spaulding v. Denton, supra; Garfinkle v. Arcata National Corp.,* 64 F.R.D. 688 (S.D. N.Y.1974).

■ Faced with two absolute, but unsatisfactory, rules on this question, we feel it is necessary to examine the purposes behind the protection afforded trial preparation materials and develop a test which will best effectuate these purposes. The primary reasons for the protection given by Rule 26(b)(3) to materials prepared in anticipation of litigation are to maintain the adversarial trial process and to ensure that attorneys are adequately prepared for trial by encouraging written preparation. *See Hickman v. Taylor,* 329 U.S. 495, 510–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947);

*Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980). Counsel should not be permitted or encouraged to try a case on "wits borrowed from [an] adversary." *Hickman,* 329 U.S. at 516, 67 S.Ct. at 396 (Jackson, J., concurring). Further, an attorney or party's agent should not be deterred from adequately preparing for trial because of the fear that their efforts will be freely disclosed to opposing counsel. *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. On the other hand, the rules should be construed to allow discovery of all relevant information, so that issues may be tried on the true facts. Any formula adopted to help determine whether material fits within Rule 26(b)(3) protection should attempt to reconcile these divergent views.

Unfortunately, the cases are in considerable confusion in attempting to define the phrase "prepared in anticipation of litigation." The confusion is well described as follows:

Courts have attempted to explain exactly what anticipation of litigation means, but such efforts have not helped to resolve the ... issue. For example, some courts indicate that a party ... anticipates litigation where there is a "substantial probability" of "imminent" litigation or when there is a "prospect" of litigation. Another requirement is that there be "some possibility" of litigation; however, a "mere possibility" of litigation is not enough. Other courts have stated that there must be an "eye" towards litigation or that litigation need only be a reasonable "contingency." These methods for redefining the word anticipation do little more than say that litigation is anticipated when litigation is anticipated.

Note, *Work Product Discovery: A Multifactor Approach to the Anticipation of Litigation Requirement in Federal Rule of Civil Procedure 26(b)(3),* 66 Iowa L.Rev. 1277, 1277–78 (1981) (footnotes omitted). *See also Fontaine v. Sunflower Beef Carrier, Inc.,* 87 F.R.D. 89, 92 (E.D.Mo.1980); *In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3d Cir.1979) ("Courts and commenta-

tors have offered a variety of formulas for the necessary nexus between the creation of the material and the prospect of litigation.").

■ Given the complexity and immense variety of business and claim procedures, the variety of factual situations which are presented and the conflicting public policy principles discussed above, we believe that no single test should or could be imposed to determine whether material was "prepared in anticipation of litigation." In determining this issue, the courts should consider the following factors and any others which may be relevant in the particular case:

First, courts should consider the nature of the event that prompted the preparation of the materials and whether the event is one that is likely to lead to litigation. Implicit in such a consideration is the assumption that the more likely it is that litigation may result from a particular event, the greater the likelihood that materials prepared because of that event will have been prepared in anticipation of litigation. Second, courts should determine whether the requested materials contain legal analyses and opinions or purely factual contents in order to make inferences about why the document was prepared. Third, courts should ascertain whether the material was requested or prepared by the party or their representative.... [W]hen litigation is anticipated it is expected that an attorney or party will [have] become involved. Fourth, courts should consider whether the materials were routinely prepared and, if so, the purposes that were served by that routine preparation. One assumption underlying this factor is that materials prepared in the ordinary course of business are prepared regardless of whether litigation is anticipated. On the other hand anticipation of litigation may be a party's ordinary course of business; thus it is necessary to determine what purposes a routine preparation serves .... Last, courts should examine the timing of the preparation and ascertain whether specific claims were present or whether discussion or negotiation had oc-

curred at the time the materials were prepared.

Note, *supra,* at 1287 (footnotes omitted).

■ Turning now to the facts of this case, it is apparent that the trial court's refusal to order production of the portion of the loss of earnings claims file compiled prior to August 21, 1981 was improper. Continental did not claim that it anticipated litigation on this fire loss claim before August 21, 1981. True, it had made a claims investigation, but Continental's business is handling claims, and not every fire loss claim gives rise to an anticipation of litigation initiated by Continental's own insured. In view of Continental's contention that the Brown claim for loss of earnings was transformed from one in the ordinary course of business to one in anticipation of litigation on August 21, 1981, the denial of Brown's motion to compel with respect to the pre-August 21, 1981 material was unsupported by any proper legal basis and was therefore an abuse of discretion.

We must next consider the proposition that portions of the claims file prepared after August 21, 1981 were prepared in anticipation of litigation. In so doing, we apply the factors discussed above. In support of its argument, Continental asserts that on August 14, 1981, over nine months after Brown's property loss and damage claims had been paid, Brown submitted additional claims for loss of earnings due to the fire. On August 21, 1981, Continental informed Mr. Brown by letter that he had failed to present adequate proof for these new claims. The letter also advised Brown that Continental was reserving all rights under the policies due to a recent finding that Brown had misrepresented certain facts at the time the policies were issued.

■ While the nature of the loss which prompted the investigation in this case—a fire—may not be the type of event which of itself is likely to lead to litigation, the denial of the claim coupled with an assertion that one of the policies might be void because of Brown's alleged misrepresentations to the company support Continental's posi-

tion that on and after August 21 the company's activity was no longer in the nature of ordinary claims investigation. In addition, Brown had complained to the Director of Insurance, who had written Continental about its handling of the claim. Further, Continental had received a lien claim from the Internal Revenue Service which asserted a right to any loss proceeds which Brown might receive. Shortly after the letter of August 21, denying the claim, Continental hired counsel to represent its interests in these matters. In light of these facts, we hold that the record supports the trial court's presumptive finding that after August 21, 1981 Continental could well have concluded that litigation on *this* claim was not merely possible, but quite probable. Thus, after August 21, 1981, the materials in the claims file were "prepared in anticipation of litigation" rather than as part of Continental's regular business of handling claims; therefore the materials had a qualified immunity and were subject to production only upon a showing of "substantial need" and inability "without undue hardship" to obtain the substantial equivalent through other means. Rule 26(b)(3).

## SUBSTANTIAL NEED

 Brown asserted that the nature of its complaint against Continental necessarily established a substantial need for the materials in the claims file and an inability to obtain its equivalent. The trial court apparently rejected this argument; we must determine, therefore, whether this was an abuse of discretion. Brown's action alleged bad faith on the part of the insurance company by failing to pay Brown's claim for loss of earnings. Continental conceded at oral argument that the claims file contains a "blow-by-blow" diary of the insurer's investigation and decision-making process with regard to Brown's loss of earn-

ings claim. The tort of bad faith arises when an insurance company intentionally denies, fails to process, or fails to pay a claim without a reasonable basis for such action. *Sparks v. Republic National Life Ins. Co.,* 132 Ariz. 529, 538, 647 P.2d 1127, 1136 (1982); *Noble v. National American Life Ins. Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981); *Farmers Insurance Exchange v. Henderson,* 82 Ariz. 335, 338–39, 313 P.2d 404, 406 (1957) (insurer must give equal consideration to both its own interests and the insured's interests). No matter how the test is defined, bad faith is a question of reasonableness under the circumstances. *Sparks, supra.* The portions of the claims file which explained how the company processed and considered Brown's claim and why it rejected the claim are certainly relevant to these issues.[6]

 Further, bad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming. *APL Corporation v. AETNA Casualty & Surety Co.,* 91 F.R.D. 10, 13–14 (D.Md.1980). The "substantial equivalent" of this material cannot be obtained through other means of discovery. The claims file "diary" is not only likely to lead to evidence, but to be very important evidence on the issue of whether Continental acted reasonably. *Id.* at 14. We find, therefore, that the trial court's denial of Brown's motion to compel production of any portion of the claims file com-

---

**6.** It could be persuasively argued that Brown had not shown the "necessity" for production of the documents or materials compiled subsequent to the date on which Continental denied the claim by letter which stated the specific reasons for denial (lack of documentation and possible misrepresentation). One could argue that the propriety or impropriety of the denial was fixed as of that date and that the portions of the file compiled subsequent to that date were either unnecessary or irrelevant. That argument has not been raised by Continental, was not mentioned by the judge in his order, and cannot be determined on the record before us. Therefore, we do not reach the issue.

piled after August 21, 1981 was unsupported by the record.

## TRIAL PREPARATION MATERIALS—MENTAL IMPRESSIONS

Even if discovery is permitted, Continental maintains that mental impressions and legal theories of their counsel, agents or other representatives are contained in the file and are absolutely protected from disclosure. Continental asserts that the plain language of Rule 26(b)(3) requires absolute immunity for these materials because the rule provides "the court *shall* protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney [7] or other representative of a party concerning the litigation." (Emphasis supplied.) Indeed, some courts have held that without exception such material is immune from discovery. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir.1974); *In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973). We left this issue open in *Longs Drug Stores v. Howe*, 134 Ariz. 424, 430 n. 7, 657 P.2d 412, 418 n. 7 (1983).

■ Recognizing that mental impressions and the like are afforded greater protection under Rule 26(b)(3), *Longs*, 134 Ariz. at 428, 657 P.2d at 416, we do not believe such protection can be absolute in a case presenting issues similar to the one at bench. As we explained above, the reasons the insurance company denied the claim or the manner in which it dealt with it are central issues to Brown's claim of bad faith. Thus, the strategy, theories, mental impressions and opinions of Continental's agents concerning the loss of earnings claim are directly at issue. When mental impressions and the like are directly at issue in a case, courts have permitted an exception to the strict protection of Rule 26(b)(3) and allowed discovery. *See Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill.1981); *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.*, 66 F.R.D. 129 (E.D.Pa. 1975); *SEC v. National Student Marketing Corp.*, 18 F.R.Serv.2d 1302 (D.D.C.1974); *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D. Pa.1973); *Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 296 F.Supp. 979 (E.D. Wis.1969); *Bourget v. Government Employees Insurance Company*, 48 F.R.D. 29 (D.Conn.1969) (a bad-faith case); *Moore, supra*, ¶ 26.64[4], at 26–447; Note, *Protection of Opinion Work Product Under the Federal Rules of Civil Procedure*, 64 Va.L.Rev. 333, 341–42 (1978).[8]

---

7. Continental does not raise the issue of attorney-client privilege, and we do not address that question. Further, we have no way of determining whether any material in the file is within the privilege.

8. One could argue that this result is mandated by the language of Rule 26(b)(3), which seems to recognize a different standard with respect to immunity for "true work product." The rule grants qualified immunity (discovery only upon a showing of substantial need and inability otherwise to obtain) to material prepared "in anticipation of litigation or for trial." It does not specify which litigation or trial, thereby implying that all trial preparation material is to be given qualified immunity, even though the case for which it was prepared is not the case which is before the court and even though the two cases may not be related. On the other hand, the absolute immunity given true work product (mental impressions, conclusions, opinions and legal theories) is granted only "concerning *the* litigation" (emphasis supplied), thereby leading to the conclusion that the absolute immunity is only applicable to the work product of the very case being litigated.

This interpretation of the rule would certainly resolve the pragmatic problems that would arise in many types of cases if absolute immunity were extended to mental impressions, conclusions, opinions and legal theories accumulated as part of the preparation of cases other than the one being litigated. In the case at bench it is possible, for example, that the insurer denied payment of the claim because of a legal theory (that there was no coverage), a mental impression (that the insured had exaggerated the claim), an opinion (that the fire was attributable to arson), etc. If the file shows such a reason for denial of the claim, this information would go to the very heart of the question of whether the company acted in good or bad faith and must be admissible, and thus discoverable, in a subsequent bad-faith case. Similar considerations would exist in a variety of other actions such as legal malpractice, malicious prosecution, abuse of process and all other cases in which the issue is the motives or reasons for, or the propriety or impropriety of,

 We emphasize, however, that this exception will only be permitted where the material sought to be discovered is central to a party's claim or defense. Accordingly, we find the trial court abused its discretion in refusing to permit discovery of the mental impressions, opinions, conclusions or legal theories of Continental's representatives which pertain to the loss of earnings claim and are contained in the claims file.

## ACCOUNTANT–CLIENT PRIVILEGE

Continental's final argument to deny production was that correspondence and reports of certified public accountants hired by the company to investigate the claim were privileged pursuant to A.R.S. § 32–749 and therefore not subject to discovery. A.R.S. § 32–749 provides in part:

> Certified public accountants ... practicing in this state shall not be required to divulge, nor shall they voluntarily divulge information which they have received by reason of the confidential nature of their employment. Information derived from or as a result of such professional source shall be deemed confidential....

 We do not believe this statute protects the material in question. In support of its argument that the material in the file compiled after August 21 was prepared in anticipation of litigation, Continental asserted that it had hired the accountants to investigate Brown's business accounts and assist them in preparing for the arbitration proceedings. Thus, the accountants' reports and opinions are protected, if at all, by resort to Rule 26(b)(4),

which pertains to discovery of trial preparation material relating to experts, both testimonial and non-testimonial. Continental did not raise this issue in the trial court or this court and we do not decide whether the reports and correspondence are protected under Rule 26(b)(4). *See Nick Istock, Inc. v. Research—Cottrell, Inc.,* 74 F.R.D. 150 (W.D.Pa.1977). We do decide, however, that A.R.S. § 32–749 affords no privilege protection under these circumstances. The privilege applies to communications between accountant and client when those communications pertain to the client's financial affairs; it does not apply to communications received by the client from an accountant employed as an expert to examine the affairs of a non-client.

## CONCLUSION

The relief requested by Brown is denied with respect to the portion of the claims file concerning the property damage claims; relief is granted, consistent with this opinion, with respect to the portions of the file concerning the loss of earnings claim. Respondent judge is instructed to order production to the extent proper under the principles set forth in this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

a party's actions in handling a prior legal matter or proceeding. Thus, the absolute immunity accorded for the essence of work product—mental impressions, conclusions, opinions or legal theories of the attorney or other representative—would apply only to the case being litigated (here, the bad-faith case) and not to such material prepared for some prior case which is the subject of the instant litigation. Of course, the "true work product," like all other trial preparation material, will continue to enjoy the qualified immunity even though prepared in another case.