**Billie TACKETT and Truman Tackett, her husband, Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: Sept. 28, 1988.
Decided: Oct. 20, 1988.

---

On Plaintiffs' Motion to Compel Discovery—GRANTED IN PART; DENIED IN PART.

Edmund D. Lyons, Jr. and Michael W. Modica, of Aerenson, Ferrara & Lyons, Wilmington, for plaintiffs.

F. Alton Tybout and Donald M. Ransom of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant.

## ORDER

POPPITI, Judge.

The matter is presently before the Court on plaintiff's Motion to Compel Document Production pursuant to Superior Court Civil Rule 37(a)(2).

This is an action against State Farm Fire and Casualty ("State Farm") sounding in tort wherein the plaintiffs claim, in substance, that State Farm acted in bad faith in refusing to honor plaintiffs' claim for policy limits under the under-insured motorist provisions of an insurance policy. State Farm, *inter alia*, denies any bad faith on its part and alleges an affirmative defense that plaintiff Billie Tackett failed "to supply adequate information to the defendant at the time complained of, which information was necessary to fully evaluate plaintiff's claim."

An understanding of the procedural posture of this case is necessary in order to properly focus on the discovery dispute *sub judice.*

Billie Tackett was injured in an automobile accident sometime in May 1984. The accident was caused by a third-party tortfeasor. Sometime after suit was filed, the claim was settled for the limits of the insurance policy covering the tortfeasor. Since the payment of policy limits did not compensate the plaintiff for all claimed injuries suffered by virtue of the accident, in December of 1985 the plaintiffs initiated a claim against their own underinsured motorist coverage in force on the date of the accident.

Since State Farm did not immediately agree that any such coverage was afforded by the plaintiffs' insurance policy, plaintiffs filed an action against State Farm on February 12, 1986 seeking, *inter alia,* declaratory judgment and money damages for breach of contract. There was no claim of bad faith in the original complaint.

On June 5, 1986, the parties entered into a stipulation dismissing all but the breach of contract claim, and agreeing that at the time of the accident plaintiffs had $50,000 per person/$100,000 per accident limits of underinsured motorist coverage.

On November 7, 1986 counsel for the plaintiffs made a demand for the full $50,-000 of the underinsured coverage.

Believing that Billie Tackett's injuries were not proximately caused by the accident, one Linda Walters of State Farm called counsel for plaintiffs to request an Independent Medical Examination. The examination was performed by Dr. Dewey A. Nelson on January 9, 1987. On January 30, 1987 Dr. Nelson's report was received by State Farm. On February 11, 1987 State Farm wrote to Dr. Nelson requesting a more specific opinion as to whether the accident was the sole cause of Mrs. Tackett's injuries. By correspondence dated February 22, 1987, Dr. Nelson responded to the inquiry stating in pertinent part as follows:

The patient's present total disability is not solely the result of the accident of May 3, 1984 based upon my knowledge of the history which began in 1968. These complaints concerning her low back, chest injury, head injury, etc. are described in pages 1 and 2 of my evaluation dated January 9, 1987.

On March 2, 1987 Ms. Walters forwarded to State Farm's outside attorney for review and evaluation Dr. Nelson's reports as well as Mrs. Tackett's employment records which indicated that she was able to work from August 1984 until June 1985.

On March 6, 1987 State Farm received plaintiffs' attorney's letter of March 2, 1987 which reads in pertinent part as follows:

Ms. Walter has now advised my office that she had received a supplemental report from Dr. Nelson, which she has agreed to provide me but which I have not seen yet, which indicates that Mrs. Tackett's current condition is not entirely attributable to her accident. It seems to me that the answer to that position is simply that whatever her condition, Mrs. Tackett was able to work before the accident and is now unable to work.

On March 10, 1987 Rick Nullo of State Farm determined the value of the plaintiff's claim to be "no more than" $30,000.

On March 18, 1987 State Farm received correspondence from plaintiff's counsel again demanding policy limits stating in pertinent part:

Regarding Dr. Nelson's statement that 'the patient's present total disability is not solely the result of the accident of May 3, 1984, based upon my knowledge of the history which began in 1968,' it seems to me that the doctor is saying that this case presents an aggravation of a pre-existing injury. In my view, that does not undercut Mrs. Tackett's right to recover on the underinsured motorist policy.

Although Dr. Nelson appears to take issue with the opinion of Eric Wissel, the Vocational Rehabilitation[ist] who had previously seen Mrs. Tackett, it seems to me that Dr. Nelson's opinion is not firmly grounded in the facts of this case. Although it is true that Mrs. Tackett's restrictions, as imposed by Dr. Nelson, would not rule out employment as a receptionist or secretary, her educational and work history would rule out such employment.

By April both State Farm and counsel for the plaintiff reaffirmed their respective positions of $30,000 and $50,000 respectively.

Between May 8, 1987 and June 4, 1987 State Farm received additional information from plaintiffs' counsel, Mr. Lyons, which had not theretofore been provided:

1. Medical records from Dr. Weaver dating as far back as January 1, 1986. (Received May 8, 1987);

2. A copy of an economic report from Dr. Frances Tannian dated May 6, 1987. (Received May 19, 1987); and

3. A copy of a rehabilitation counselor's report dated May 25, 1987. (Received June 4, 1987).

On June 4, 1987 one Frances Rinehardt of State Farm attempted to contact plaintiffs' attorney by telephone ostensibly to pursue offering policy limits in exchange for a release of all claims. A written offer of policy limits was conveyed to plaintiffs' attorney on June 12, 1987.

On July 2, 1987 State Farm yet again received medical records that had not been supplied theretofore. Four days after receiving the new information, State Farm

conveyed a $50,000 draft to plaintiffs' attorney requesting a dismissal of all claims.

On July 9, 1987 Rinehardt received a telephone call from plaintiffs' attorney explaining that he wished to negotiate the draft, and further advising that he did not want to dismiss the suit, but rather wanted to add a bad faith count to the complaint.

By August 24, 1987 State Farm had agreed to the amendment of the complaint and the draft was negotiated.

During discovery, plaintiffs propounded the following interrogatory to State Farm:

Set forth all facts in support of any claim by State Farm that it had any "reasonable justification" in support of State Farm's decision to not pay plaintiff's claim in full, such claim having been presented for underinsured motorist benefits under State Farm policy S43–4056–A–17–08–B.

In discovery plaintiffs have also requested State Farm to produce its "complete claims file relating to the claim at issue in this action, whether maintained in the defendant's field office, regional office, home office or any other office, including without limitation" certain specifically described records.

In State Farm's response to Plaintiffs' Request for Production, State Farm produced, *inter alia,* 15 pages of claims file entries. In this production State Farm referenced nine deletions of material. In addition, State Farm has refused to produce any part of a so-called Errors and Omissions claim file, seven separate internal State Farm memoranda and any correspondence between State Farm and its outside attorneys. In substantial part, the asserted justification for the deletions and omissions is attorney-client and work product privilege under Superior Court Civil Rule 26(b) which provides in pertinent part as follows:

(3) Trial Preparation Materials: Subject to the provisions of subdivision (b)(4) of this Rule, a party may obtain discovery under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representation (including his attorney, consultant ... or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the Court shall protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

State Farm also objects to their production on the grounds of relevance pursuant to Superior Court Rule 26(b)(1).

I have ordered State Farm to submit the withheld and redacted documents for my *in camera* inspection. In this regard, I did not direct the submission of correspondence between State Farm and its outside counsel subsequent to State Farm's tendering of policy limits. By letter dated September 28, 1988, the submission was accomplished and I have taken the opportunity to review each document in its entirety.

As a result of this review, it became readily apparent to me that documents contained in the so-called Errors and Omissions claim file regarding Agent Robert Mullen and his asserted failure to provide the required Form "A" deal exclusively with the settled reformation claim. As such, I am satisfied that the production of such documents does not "appear reasonably calculated to lead to the discovery of admissible evidence" in the bad faith action. Super.Ct.Civ.Rule 26(b)(1). Plaintiffs' application in this regard is therefore HEREBY DENIED.

*Relevance of Materials*

At the same time, in light of State Farm's denial of any bad faith and its assertions that it processed the claim in a reasonable fashion and that plaintiffs failed to supply information adequate to fully evaluate Mrs. Tackett's claim, it is equally apparent that withheld and redacted documents contained in the claims file meet

the relevancy test of Rule 26(b)(1). The court in the case of *In Re Bergeson,* 112 F.R.D. 692 (D.Mont.1986) stated as follows:

> In a first party bad faith case ... where the insurance company has refused to pay benefits claimed under the policy, the critical issue is whether the company had a good faith basis for its decision. This in turn requires a number of other inquiries including the substance of any investigations conducted by the insurer, the information available to the company at the time its decision was made, and the manner in which the company arrived at its decision, including reliance on advice of counsel. The insurance company's claims file constitutes the only source of this information.

*See Brown v. Superior Court In & For Maricopa Cy.,* 137 Ariz. 327, 670 P.2d 725 (1983). (First party bad-faith claim—claims file documents meet the Rule 26(b)(1) test of relevance. The court 670 P.2d at 734 stated: "no matter how the test is defined, bad faith is a question of reasonableness under the circumstances ... the portions of the claims file which explained how the company processed and considered Brown's claim and why it rejected the claim are certainly relevant to these issues."); *see also APL Corporation v. AETNA Casualty & Surety Co.,* 91 F.R.D. 10 (D.Md.1980) (First party bad-faith claim—claims file documents meet the Rule 26(b)(1) test of relevance. The court at 14 stated: "Thus, as to plaintiffs' claim of bad faith, the documents in question may constitute quite important evidence as to whether Aetna conducted a diligent investigation of plaintiffs' claim and whether Aetna acted in good faith in denying the claim.").

Having determined that information contained in the claims file meets the relevancy test of Super.Ct.Civil Rule 26(b)(1), the inquiry becomes whether the materials are immune from production because they are privileged.

*Trial Preparation Materials*

From a review of the deleted and redacted documents contained in the claims file, it is readily apparent to me that the materials were prepared as a result of the fair prospect of litigation.[1] The materials do therefore qualify as preparation materials. In this regard it has been said that:

> Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024 at 198 (1970).

Indeed materials generated in the instant case which were generated prior to the filing of the amended complaint containing the bad faith claim were all nonetheless prepared against the backdrop of ongoing litigation between these parties arising directly from the very claim in dispute. To suggest as the plaintiffs do, that the two matters are not closely related is simply not a "sound view" where the parties are the same, within the same law suit and where the bad faith claim arises directly from the defendant's evaluation of the underlying insurance claim. *See Hercules, Inc. v. Exxon Corp.,* D.Del., 434 F.Supp. 136, 153 (1977).

*Substantial Need*

The privilege is, however, not absolute; it is rather a qualified privilege. Where the benefit to the resolution of the case outweighs the potential injury to the party from whom discovery is sought, disclosure may be required. *Ramada Inns, Inc. v. Drinkhall,* Del.Super., 490 A.2d 593, 597 (1985). The focus of the inquiry as found in the language of the rule is whether the party seeking discovery has "substantial need of the materials in the preparation of his case and [whether] he is unable to obtain the substantial equivalent of the ma-

---

**1.** Although I did not see the need to discuss factors developed by the court in the case of *Brown, supra* 670 P.2d at 733, I believe the approach taken therein to be of value. *See Mullins v. Vakili,* Del.Super., 506 A.2d 192 (1986) (adopting the *Brown* factors).

terials by other means." Superior Ct. Civil Rule 26(b)(3).

Plaintiffs assert that they meet the substantial need/inability test of the rule by virtue of the very nature of the litigation. In short, plaintiffs' position is that where bad faith is asserted and where the defendant takes the position that "this claim was handled routinely, without any undue delay, with no bad faith on the part of State Farm ... or its employees," the trial is the file.

In the case of *Casson v. Nationwide Ins. Co.*, Del.Super., 455 A.2d 361 (1982), this Court discussed the elements of the tort of bad faith vis-a-vis an insurer and its insured. The Court stated:

Exemplary damages are not recoverable as a general rule in a pure action for breach of contract, *Id* at 368, and, traditionally, recovery for breach of an insurance contract is confined to the actual amount owed under the contract plus legal interest. *Id.*

\* \* \* \* \* \*

I am satisfied that, given a proper set of circumstances, our courts would authorize recovery of punitive damages in egregious cases of wilful or malicious breach of contract. *Id.*

\* \* \* \* \* \*

Plaintiff contends, however, that the conduct by the insurer need not amount to wilful or malicious conduct to permit recovery. It is argued that a bad faith refusal on the part of the insurer to pay the insured justifies an award of punitive damages and decisions in other jurisdictions so indicate. *Id.* Plaintiff further argues that an insurer's bad faith refusal to make payments due under a contract of insurance, breaches an implied duty to deal fairly and in good faith with an insured and creates an independent cause of action in tort for mental suffering. *Id.* at 369.

If it be assumed that either cause of action is recognized in Delaware, in order to establish 'bad faith' the plaintiff must show that the insurer's failure to honor its contractual obligation was clearly without any reasonable justification. *Id.* at 369. This standard of reasonableness tests the judgment of the insurer's agent in deciding to contest the insurer's liability in the fact of a claim. *The ultimate question is whether at the time the insurer denied liability there existed a set of facts or circumstances known to the insurer which created a bona fide dispute and therefore a meritorious defense to the insurer's liability. Id.* (Underscore added.)

In order therefore to prove reasonable justification, it is certain that a plaintiff will have to establish how the defendant processed the claim, why the defendant took the action it did, and why it took the time it did to process the claim. In this context, it is clear then that, "The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming. *Brown* 670 P.2d at 734. The 'substantial equivalent' of this material cannot be obtained through other means of discovery. The claims file 'diary' is not only likely to lead to evidence, but to be very important evidence on the issue of whether Continental acted reasonably." *Brown, supra* at 734.

Given the very essence of a claim of bad faith, I am satisfied that plaintiffs have met the substantial need test of Rule 26(b)(3).

The defendant further maintains that plaintiffs should not be able to secure work product material simply by alleging "bad faith." Rather, defendant suggests that plaintiffs should be required to make a *prima facie* showing in support of their claim—that is, a showing such that the evidence in favor of plaintiffs' claim be sufficient to support a finding in their favor, if all of the evidence to the contrary is disregarded. *United Services Automobile Association v. Werley*, Alaska Supr., 526 P.2d 28, 32 n. 15 (1974). Such a requirement has been mandated by some courts where the issue is whether the client was seeking to perpetrate a crime or other evil enterprise in

concert with his attorney. *United Services Automobile Association, supra* at 32 n. 13–16. Several commentators conclude that this procedure is unnecessary to protect against an invasion of communications between attorney-client which is broader than is necessary to pierce the cloaks of a privilege when used to hide a fraud. Rather, commentators have suggested that abuses can be checked by the Court with the use of such things as *in camera* review or focused discovery. *See Proposed Rules of Evidence*, 46 F.R.D. 161 at 256 (1969); C. McCormick, *Evidence* § 95 (3rd ed.1984).

I am simply not convinced that I should engraft an additional requirement onto the already rigid requirements of Rule 26(b)(3) and against the protective requirements of Rule 11. To do otherwise would, in my view, force a plaintiff into a position of meeting a test substantially the same as when faced with a motion for summary judgment long before it has had an opportunity to fairly and adequately develop the record. This is especially so against the backdrop of the uncontroverted facts of this case where the plaintiff made a demand of policy limits in November of 1986 and defendant failed to meet the demand until July of 1987 when it tendered policy limits. If a delay of eight months can support a finding of bad faith, it can do so measured only against information regarding the processing of the claim which is only available to the plaintiffs through the diary of the claims file.

*Mental Impressions*

█ State Farm maintains that even if discovery of the claims file is permitted, it may not include the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." Super.Ct.Civ.Rule 26(b)(3). Thus State Farm contends, "... no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions, or legal theories." *Duplan Corp. v. Moulinage et Retorderie de Cha-*

vanoz, 509 F.2d 730, 734 (4th Cir.1974). I do not agree. A number of courts have recognized two exceptions to the strict application of the rule which would prohibit disclosure of opinions and mental impressions in all circumstances. The first is the so-called crime or fraud exception and the second is when the opinions or theories of the attorney are actually at issue or so closely tied to the issues of the case as to be inextricable.[2] *See Note, Protection of Opinion Work Product under the Federal Rules of Civil Procedure*, 1978, 64 Va.L. Rev. 333. The "at issue" exception, although not necessarily called by the same name, has been discussed and where appropriate adopted in recent Delaware cases. In the case of *Ramada Inns, Inc., supra* at 597, the court stated as follows:

A party by his actions in the litigation may create a situation which will be held to be a waiver of the protection which normally applies to work product ... Similar waiver has been found to apply where the issue was lack of good faith of an insurance company to require disclosure of the insurer's claims file, *Bourget v. Government Employees Insurance Company*, 48 F.R.D. 29 (D.Conn.1969), where reliance on advice of counsel was a defense, *Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill.1981) ..., and where intent of the party was at the heart of the case, *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444 (S.D.Fla.1980).

*See also Eastern Commercial Realty Corp., et al. v. Fusco, et al.*, Del.Super., C.A. No. 85C–OC–92, 1987 WL 9603 Gebelein, J. (April 13 1987); *Sealy Mattress Co. of New Jersey, et al. v. Sealy, Inc., et al.*, Del.Ch., 532 A.2d 1324 (1987).

The court in *Brown, supra*, adopting the at issue exception, succinctly concluded as follows:

Recognizing that mental impressions and the like are afforded greater protection under Rule 26(b)(3), *Brown* [670 P.2d] at 735, we do not believe such protection can be absolute in a case presenting is-

---

**2.** Delaware Uniform Rules of Evidence 502(d)(1) codified the crime or fraud exception. There is nothing within the language of the rule which, in my view, prohibits consideration of the "at issue" exception.

sues similar to one at bench ... the reasons the insurer denied the claim or the manner in which it dealt with it are central to [plaintiff's] claim of bad faith. Thus, the strategy theories, mental impressions and opinions of [the insurer's] agents concerning the ... claim are directly at issue. When mental impressions and the like are directly at issue in a case, courts have permitted an exception to the strict protection of Rule 26(b)(3) and allowed discovery. *Id.*

Having stated the above, it follows *a fortiori* that reserve figures which are the product of mental impressions, opinions and conclusions of the insurer's agents are likewise discoverable in the context of the case at bar. *Groben v. Travelers Indemnity Company*, N.Y.Supr., 49 Misc.2d 14, 266 N.Y.S.2d 616, 619 (1965) and *Town of Nassau v. Phoenix Assur. Co. of New York*, Sup.Ct.App.Div., 57 A.D.2d 992, 394 N.Y.S.2d 319, 320 (1977). In my view the cases of *North Georgia Lumber and Hardware v. Home Ins. Co.*, 82 F.R.D. 678 (N.D.Ga.1979) and *Union Carbide Corp. v. Travelers Indem. Co.*, 61 F.R.D. 411 (W.D. Pa.1973) are distinguishable in that *North Georgia Lumber* does not specifically hold that reserve figures are not subject to discovery and *Union Carbide Corp.* is not a first party bad faith claim. In *Groben* the court essentially accepted the "at issue" exception to the privilege stating that:

> Examination with respect to the reserve may develop evidence on the issue of the defendant's bad faith. Bad faith is a state of mind which must be established by circumstantial evidence. The actions of defendant in respect to the reserve are relevant. Negligent investigation and uninformed evaluation of the worth of the ... claims goes to the heart of the case since serious and recurring negligence can be indicative of bad faith. Defendant's actions on the reserve may have a direct bearing on the issue. *Id* 266 N.Y.S.2d at 619.

For the reasons stated herein, plaintiffs motion will be GRANTED. An order in appropriate form has been entered. IT IS SO ORDERED.