821 So.2d 1233 (2002)
VESTA FIRE INSURANCE, etc., Petitioner,
v.
Gladys FIGUEROA, Respondent.
No. 5D02-289.
District Court of Appeal of Florida, Fifth District.
July 26, 2002.
*1234 Donald N. Williams, of Donald N. Williams, P.A., Orlando, for Petitioner.
Brandon S. Peters, of Morgan, Colling & Gilbert, P.A., Orlando, for Respondent.
GRIFFIN, J.
Petitioner, Vesta Fire Insurance Corporation ["Vesta"], the defendant below, seeks a writ of certiorari to quash an order of the trial court requiring Vesta to produce inter alia, its "entire claim file" to the plaintiff below, Gladys Figueroa ["Figueroa"]. We agree that the order should be quashed.
Figueroa's complaint against Vesta alleges that she suffered a covered loss under her policy with Vesta consisting of damage to her 1995 Peterbilt truck due to an unknown third party's acts of theft and vandalism. Count I of her complaint alleges Vesta's breach of the insurance contract and count II alleges bad faith. With the filing of the complaint, Figueroa served a request for production of various documents including Vesta's entire claim file. Figueroa also subpoenaed the claim file of Vesta's independent adjustor, Gator Adjustors, Inc. ["Gator"]. In response, Vesta timely objected on the basis of work product and attorney/client privilege. After a hearing on Figueroa's motion to compel, the trial court reserved ruling pending Figueroa's "compliance with the pertinent Florida Rule of Civil Procedure" regarding discovery of material that "may be protected by the work product privilege." Apparently, this referred to the provision in Florida Rule of Civil Procedure 1.280(b)(3), allowing discovery of work product where the requesting party can show need and the inability to obtain the substantial equivalent by other means without undue hardship.
Counsel for Figueroa filed with the trial court an affidavit averring the need for the claim file:
5. Long before this lawsuit was filed, Defendant retained Gator Adjuster's, Inc., as an independent adjuster to adjust Plaintiffs claim for policy benefits.
6. Gator Adjusters, Inc., assumed primary responsibility for adjusting plaintiffs claim, but did so in consultation with Defendant.
7. Plaintiff has requested a copy of the claim file of Gator Adjustors, Inc., including any documentary evidence of communications between Gator Adjuster's, Inc., and Defendant's representatives. Plaintiff requested this information through a subpoena directed to Gator Adjusters, Inc.
8. Plaintiff also requested the production of the above information directly from Defendant. Defendant objected to that discovery request, *1235 invoking the work product privilege.
9. Plaintiff needs the above-described information to prepare this case for trial.
10. The requested information contains a blow-by-blow diary of the insurer's investigation and decision-making progress with regard to Plaintiff's property insurance claim.
11. A cause of action for bad faith misconduct by an insurance company arises when a carrier intentionally denies, fails to process, or fails to pay a claim on a timely basis without a reasonable basis for such action. See Section 624.15, Fla. Stat.

12. The information sought to be discovered by Plaintiff explains how Defendant processed and considered her claim and why it rejected the claim. Therefore, the information is certainly relevant to the issues raised by the pleadings. Bad faith actions against an insurance company can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the actions it did.
13. The claims file, as well as the documentary evidence of communications between Defendant's representatives and the independent adjuster hired by the Defendant is a unique, contemporaneously prepared history of Defendant's handling of Plaintiff's disputed claim. In an action such as this one, the need for information requested by Plaintiff is not only substantial, but overwhelming.
14. The substantial equivalent of the items requested by Plaintiff cannot be obtained through other means of discovery.
Subsequently, a second hearing was conducted on Figueroa's motion to compel discovery. At this hearing, the trial court, in reviewing the above-quoted affidavit, remarked: "Of course in these bad faith cases it's apparently very easy to make the showing because all you have to do is say what it says in the Brown case and really you have grounds for the showing." The case referred to by the trial court was Brown v. Superior Court, 137 Ariz. 327, 670 P.2d 725 (1983), a case in which the Arizona court required production of an insurer's claim file because it represented a "unique" history of the handling of the claim:
Brown's action alleged bad faith on the part of the insurance company by failing to pay Brown's claim for loss of earnings. Continental conceded at oral argument that the claims file contains a "blow-by-blow" diary of the insurer's investigation and decision-making process with regard to Brown's loss of earnings claim. The tort of bad faith arises when an insurance company intentionally denies, fails to process, or fails to pay a claim without a reasonable basis for such action. No matter how the test is defined, bad faith is a question of reasonableness under the circumstances. The portions of the claims file which explained how the company processed and considered Brown's claim and why it rejected the claim are certainly relevant to these issues.
Further, bad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such *1236 as this the need for the information in the file is not only substantial, but overwhelming. The "substantial equivalent" of this material cannot be obtained through other means of discovery.
670 P.2d at 734 (citations omitted).
Counsel for petitioner responded that, Brown notwithstanding, under this court's opinion in National Security Fire and Casualty Co. v. Dunn, 751 So.2d 777 (Fla. 5th DCA 2000), Figueroa should be required not only to show "need" but also to demonstrate an effort to obtain the substantial equivalent by means other than obtaining the work product of the carrier. Counsel for Figueroa replied:
Your honor, in this footnote in Dunn, this entire Dunn opinion is the reason I pointed out the two-tier organization of a bad faith claim. There is the first part where you try to get compensatory damages and the second part where you try and prove punitive damages. Dunn is all about punitive damages discovery and that is not what we are seeking in this case. Dunn is an effort on the part of the plaintiffs to discover the claims files of other people who have had blowouts with this insurance company. I'm simply trying to discover my own client's claim file.
The trial court replied: "Well, with that distinguishing factor I would grant the motion." The court then entered its written discovery order requiring production of both Vesta's and Gator's claim files.
As petitioner pointed out to the trial judge, the only Florida case to have favorably cited Brown v. Superior Court, 137 Ariz. 327, 670 P.2d 725, was Fidelity & Casualty Insurance Co. v. Taylor, 525 So.2d 908 (Fla. 3d DCA 1987). Taylor was expressly disapproved by the Supreme Court of Florida in Kujawa v. Manhattan National Life Insurance Co., 541 So.2d 1168 (Fla.1989).
In Kujawa, the supreme court addressed the issue we face. The Taylor court had taken the position that in a statutory first party bad faith claim the entire insurance claim file was discoverable notwithstanding its work product character because the claim file was "virtually the only source of information on [the bad faith conduct] questions." 525 So.2d at 909. Taylor explained that because a statutory "bad faith" claim against an insurer focused on an insurer's behavior rather than its contractual obligations, case law that had disallowed invasion of work product in a classic first party insurance dispute was inapplicable. The Supreme Court of Florida in Kujawa held that in spite of the shift in focus of the "bad faith" statute, the creation of a statutory remedy for insurer misconduct in adjusting a first party claim did not strip the insurer of its right to work product immunity. The rule of Kujawa cannot be circumvented by simply alleging in affidavit form the reasoning of Taylor, i.e. that the claim file is a unique resource for documenting the insurer's behavior. Kujawa stands for the proposition that even where the behavior of an adversary is at issue in litigation, if the materials sought were prepared in anticipation of litigation, they are not subject to discovery.
Kujawa did, however, affirm that work product in a bad faith case, just like work product in any other case, is not necessarily inviolate. If the requisite showing under Rule 1.280(b)(3) can be made, the work product may be obtainable. It is important to keep in mind, however, that work product protects the tangible product of the attorney's labor; it does not protect facts. The rule is not designed to allow access to an opposing attorney's file on the basis of "need" just because it is a veritable "road map" of the handling of the dispute. This rule provision is primarily *1237 designed for circumstances where the work of opposing counsel has produced a tangible item which the requesting party cannot now obtain or cannot obtain without undue hardship. Examples are photographs of a scene or of an object that has since changed or been lost, or a statement of a witness who has disappeared, become incapacitated or has become hard to reach. Work product is not obtainable just because the adversary's file is the best record of what adversary was doing or thinking or planning in anticipation of litigation.
We cannot say that the requisite showing of need and undue hardship can never be made without having first conducted discovery of non-immune facts or materials, but such discovery generally should first be attempted in order to make the requisite showing of need and hardship. Because the facts concerning the handling of the claim are entirely discoverable in a first party bad faith case, the circumstances under which all the requisite evidence would not be obtainable through ordinary discovery without disclosure of the physical claim file should be rare. As we explained in Dunn, there has to be a showing that information cannot be obtained without undue hardship unless the claim file is turned over. This does not mean that getting the claim file is easier than asking questions or doing investigation. Nor does it mean the loss of opportunity to access an internal document containing a comment that would inflame the jury. It is instead a device to obtain a relevant fact or item of evidence that cannot be acquired any other way.
We conclude that the trial court departed from the essential requirements of law in determining that counsel for Figueroa made the requisite showing of "undue hardship" required by Florida Rule of Civil Procedure 1.280(b)(3) for obtaining materials otherwise protected by work product. We accordingly quash the order.
WRIT GRANTED.
SAWAYA and PLEUS, JJ., concur.