**Faluela REAVIS, Plaintiff,**

**v.**

**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY and Metropolitan Life and Does 1 through 30, Defendants.**

**Civ. No. 86–1473–B(IEG).**

United States District Court,
S.D. California.

Aug. 7, 1987.

A. Mark Pope, Haasis, Pope & Correll, San Diego, Cal., for plaintiff.

Glen R. Olson, Kornblum, Kelly & Herlihy, San Francisco, Cal., for defendants.

## MEMORANDUM DECISION

IRMA E. GONZALEZ, United States Magistrate.

### BACKGROUND

On September 27, 1982, Faluela Reavis (hereinafter "Reavis") suffered knee injuries as a result of an automobile accident involving Leo Grassilli, who was insured by Metropolitan Property & Liability Company (hereinafter "Metropolitan"). According to Reavis, she made two claims against Metropolitan; one claim was for medical expenses and the other was a liability claim for damages, both pursuant to the insurance policy issued by Metropolitan.

According to Reavis, Metropolitan made three payments to her for medical expenses and subsequently denied and continues to deny that she is an "eligible injured person" entitled to receive such payments.

Reavis filed suit against Mr. Grassilli in Superior Court on or about September 26, 1983. Mr. Grassilli was served with the summons and complaint on August 8, 1984. Soon thereafter, Metropolitan appointed the Law Offices of Louis D. Estes to represent Mr. Grassilli. Dennis Atchley of that office handled the case. On December 27, 1985, Reavis obtained an arbitration award against Mr. Grassilli in the amount of $22,-000. The award has been paid by Metropolitan.

Reavis filed this action against Metropolitan in San Diego Superior Court on May 8, 1986; Metropolitan removed the action to United States District Court on July 9, 1986. Reavis alleges that her claims for medical expense benefits and liability damages against Metropolitan's insured were not promptly, fairly and equitably settled in violation of California Insurance Code Section 790.03(h). She seeks extra-contractual compensatory and punitive damages against Metropolitan.

On July 11, 1986, Reavis served her first set of Requests for Production of Documents upon Metropolitan requesting in general: (1) the complete company files relating to plaintiff's liability claim against Mr. Grassilli; (2) the complete company files relating to plaintiff's claim for medical expense benefits under Mr. Grassilli's policy of insurance; (3) claims manuals relating to the handling of liability claims and claims for medical expense benefits under Metropolitan auto policies; (4) a certified copy of the policy of insurance issued to Mr. Grassilli; and (5) any other file maintained by Metropolitan regarding claims relevant to the lawsuit. Metropolitan objected to production of most of the documents contained in the claims files on the basis of attorney-client privilege and/or the attorney work-product doctrine and that the production would violate the privacy of Metropolitan's insured. Metropolitan objected to production of the Claims Manual on the basis of trade secrets privilege.

On June 22, 1987, Reavis' Motion to Compel Production of Documents came on for hearing. After disposing of a portion of the issues in contention, the Court requested that Metropolitan submit for an *in camera* inspection, those documents which Metropolitan contends are privileged under the attorney-client privilege and/or the attorney work-product doctrine.

Prior to submitting the documents to the Court for inspection, Metropolitan reviewed the documents again to ascertain if any could be produced to plaintiff without the necessity of *in camera* review. Metropolitan identified 57 such documents in the Regional Office claim file and 52 such documents in the Home Office claim file which it produced to plaintiff by supplemental response. Thereafter, on July 14, 1987, Metropolitan submitted for the Court's review 146 documents in the Regional Office claim file and 103 documents in the Home Office claim file.

### DISCUSSION

The Court has reviewed each page of each document submitted by Metropolitan in order to determine whether the doc-

ument is privileged under the attorney-client privilege or the work-product doctrine.[1]

Rule 26(b)(3) of the Federal Rules of Civil Procedure controls as to whether a document is work-product. California rules control as to whether the attorney-client privilege applies, since this is a diversity action in which claims and defenses are based upon state common law and statutory law. Rule 501, Federal Rules of Evidence.

## A. WORK–PRODUCT DOCTRINE

### 1. *The Qualified Privilege Under The Work Product Doctrine.*

The work-product doctrine was first enunciated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In that case the Court recognized a general policy against invading the privacy of an attorney's course of trial preparation. The Court placed the burden on the party who would invade that privacy to establish adequate reasons to justify production. *Id.* at 512, 67 S.Ct. at 394.

The law governing the discovery of an attorney's work product has been substantially codified in the 1970 amendments to Rule 26 of the Federal Rules of Civil Procedure.

Rule 26(b) provides in part:

(3) **Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that a party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In

ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation ...

In this case Metropolitan asserts that all the documents in the claims files submitted *in camera* were prepared or obtained in anticipation of litigation or during litigation; that Reavis has failed to demonstrate the substantial need and undue hardship required under Rule 26(b)(3) for the production of non-mental impression portions of counsels' work product; and that Rule 26(b)(3) grants an absolute immunity to the attorneys' work product containing mental impressions, conclusions, opinions and legal theories.

Rule 26(b)(3) protects not only materials prepared by counsel but also those materials prepared by or for another party or by or for that other party's representative, including his attorney, consultant, surety, indemnitor, insurer or agent. Therefore, inasmuch as any of the questioned documents were prepared by claims adjusters or claims representatives of Metropolitan and were prepared in anticipation of litigation, they are conditionally privileged.

The first question which must be addressed is whether the documents Metropolitan claims are privileged were prepared in anticipation of litigation. The fact that Reavis made a claim against Metropolitan's insured didn't necessarily transform all statements and information obtained by Metropolitan's agents into privileged documents prepared in anticipation of litigation. Although many claims may be presented to Metropolitan, not every claim results in a lawsuit. Therefore, to give Rule 26(b)(3) such a broad interpretation would be unreasonable. See *Spaulding v. Denton*, 68 F.R.D. 342, 345 (D.Del.1975); *Garfinkle v. Arcata National Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y.1974). On the other hand, the fact that Metropolitan conducts an investigation into claims against

---

**1.** This Court has not considered any objection based on the insured's right to privacy since it

has not been alleged as to any of the documents submitted *in camera.*

its insured as a matter of routine and not at the direction of counsel does not necessarily mean that the investigation is not being conducted in anticipation of litigation, if other factors are present. *Spaulding v. Denton, supra* p. 345; 4 J. Moore, Moore's Federal Practice ¶ 26.64[3] (Supp. 1982–83)

No single test should or could be imposed to determine what is prepared in anticipation of litigation. Courts must look to the facts in each particular case.

In the present case the accident which gave rise to the liability claim against Mr. Grassilli occurred on September 27, 1982. The records reviewed by the Court indicate that between September, 1982, and January, 1983, Metropolitan's representatives spoke with Mr. and Mrs. Grassilli and Reavis. These telephone conversations occurred while the claim was being handled in the ordinary course of business. There are no documents being withheld which were generated during this period of time.

However, on January 27, 1983, Metropolitan received correspondence from attorney Daniel R. Krinsky wherein he indicated that he represented Reavis. Krinsky informed Metropolitan that his client underwent arthroscopic surgery on January 19, 1983, and offered to submit Reavis for an independent medical examination. The next step that Metropolitan apparently took was to schedule a recorded interview with Mr. and Mrs. Grassilli.

The recorded interviews took place on January 28, 1983. This is the earliest date on which any document contained in either the Regional or Home Office claims files was generated.[2] It is obvious that Mr. Krinsky's phone call prompted Mr. and Mrs. Grassilli's recorded interviews. Metropolitan believed litigation was imminent.

█ A few of the documents submitted *in camera* are dated prior to August 8, 1984, (the date on which Grassilli was served in the underlying case). These documents do not appear to have been routinely prepared. They reflect continuous negotiations between Metropolitan and Reavis' attorney obviously in an effort to avoid the anticipated litigation.

All the other documents in both claims files were prepared after litigation was commenced by Reavis or after litigation was commenced in the instant suit. Therefore, this Court concludes that all the documents sought to be produced have a qualified immunity under the work-product doctrine.

The next question is whether Reavis has made a showing of "substantial need" and inability "without undue hardship" to obtain the substantial equivalent through other means. Reavis contends that the very nature of her complaint against Metropolitan necessarily establishes substantial need for the materials in the claims files:

> Plaintiff has alleged bad faith against. defendant for defendant's refusal to make payments to plaintiff, to which she was entitled, and failure to meet the standards required by California Insurance Code Section 790.03. Plaintiff needs the information in defendant's insurance claim files to determine the motivating factors behind defendant's decision to deny plaintiff's claims for both medical payments and for damages against Metropolitan's insured. Plaintiff needs to make a realistic evaluation of her case so that litigation and settlement strategies will be based on knowledge and not speculation. Plaintiff cannot obtain the equivalent information by other means.

Reavis' Memorandum of Points and Authorities in Support of Motion to Compel Production of Documents, p. 11, LL3–13.

█ This Court agrees with Reavis. In the particular circumstances of this case Reavis has made a sufficient showing of substantial need and undue hardship to overcome the qualified immunity from dis-

**2.** In the list of documents prepared by counsel for Metropolitan, document 205A in the Regional Office claim file was allegedly generated on September 27, 1982. However this appears to be a mistake since the document clearly refers to the lawsuit served by Reavis on August 8, 1984. The date of 9/27/82 which appears at the top of document 205A is probably a reference to the date of the injury.

covery for non-mental impression work product.

Reavis' lawsuit alleges bad faith on the part of Metropolitan by failing to promptly investigate and process her claim and failing to act in good faith in reaching a prompt and equitable settlement. The tort of bad faith goes to the reasonableness of Metropolitan's handling of Reavis' claim. It is apparent that the claims files contain a detailed history of how Metropolitan processed and considered Reavis' claim; under these circumstances, the documents are certainly relevant to the issues raised in Reavis' action.

Although Reavis may be able to depose the insurance adjusters and other claims representatives who handled the claim, this may not be the substantial equivalent of the documentation contained in the claims files.

> ... The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this [bad faith] the need for the information in the file is not only substantial but overwhelming. *APL Corporation v. Aetna Casualty & Surety Co.,* 91 F.R.D. 10, 13–14 (D.Md.1980). The 'substantial equivalent' of this material cannot be obtained through other means of discovery. The claims file 'diary' is not only likely to lead to evidence, but to be very important evidence on the issue of whether Continental acted reasonably. *Id.* at 14.

*Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725, 734 (1983).

### 2. *Trial Preparation Materials—Mental Impressions*

Metropolitan contends that Rule 26(b)(3) creates an absolute immunity from discovery of opinion work-product of the adjusters handling the Reavis claim, barring disclosure of such material under any circumstances. This Court disagrees, even though some courts have held that without exception such material is immune from discovery. See *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730 (4th Cir.1974).

There is no dispute that mental impressions are afforded greater protection under Rule 26(b)(3), but such protection should not be absolute in a case such as the one before the Court which deals with the manner in which Metropolitan handled Reavis' claim. The strategy, mental impressions and opinion of Metropolitan's agents concerning the handling of the claim are directly at issue. When mental impressions and opinions are directly at issue in a case, Courts have permitted an exception to the strict protection of Rule 26(b)(3) and allowed discovery. See *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.,* 66 F.R.D. 129 (E.D.Pa.1975); *Bird v. Penn Central Co.,* 61 F.R.D. 43 (E.D.Pa.1973); *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926 (N.D.Ca. 1976); *Brown v. Superior Court, supra.*

In *Handgards, Inc. v. Johnson & Johnson, supra* the issue in the case was the good faith of the defendants in instituting and maintaining the prior patent litigation against plaintiff. Plaintiff's success in *Handgards* depended on a showing that defendants pursued prior lawsuits knowing they would not prevail on the merits. In ordering that documents reflecting the attorney's opinions and mental impressions should be produced, the Court stated:

> ... Since the lawyers who managed and supervised the former litigation for the defendants are being called as witnesses to express their opinions as to the merits of the prior suits and the validity of the underlying patents, plaintiff has a particularized and compelling need for the production of the relevant work product of these attorneys. Without discovery of the work product, plaintiff will be unable to ascertain the basis and facts upon which the opinions of these witnesses are based. This will undoubtedly impair plaintiff's ability for effective cross-examination on a crucial issue.

*Id.* at 931.

So too in the present case, the adjusters and/or claims representatives for Metropolitan will probably testify at trial concerning the steps they took and the conclusions and opinions they had regarding Reavis' claim.

In order to effectively cross-examine these witnesses Reavis will need to know upon what facts the conclusions were based. The documents reflected in the claims file will give Reavis this information. Under these circumstances documents reflecting the knowledge, opinions, and conclusions of Metropolitan are discoverable and directly relevant to plaintiff's cause of action. Morever, in discussing whether Rule 26(b)(3) confers an absolute immunity from discovery on opinion work-product Professor Moore states:

> ... When the activities of counsel are inquired into because they are at issue in the action before the Court, there is cause for production of documents that deal with such activity, though they are 'work-product'.

4 J. Moore, Federal Practice ¶ 26.64[4], at 26–447 (2d ed. 1975).

Accordingly, this Court finds that subject to the attorney-client privilege discussed below, Reavis is entitled to discover documents reflecting the mental impressions, opinions, conclusions or legal theories of Metropolitan's representatives contained in both claims files which relate to the underlying case.[3]

## B. THE ATTORNEY–CLIENT PRIVILEGE

The attorney-client privilege attaches to confidential communications transmitted from a client to his or her attorney during the course of the attorney-client relationship. California Evidence Code, Sec. 952. This Court agrees that an insurer and its insured are joint clients of the attorney appointed to defend a liability suit against the insured. *Glacier Gen. Insurance Co. v. Superior Court*, 95 Cal.App.3d 836, 839, 157 Cal.Rptr. 435 (1979). This Court also agrees that confidential reports by an insurance company as to an accident in which its insured is involved are protected by the attorney-client privilege. *Heffron v. Los Angeles Transit Lines*, 170 Cal.App.2d 709, 718, 339 P.2d 567 (1959); *Gene Compton's*

*Corp. v. Superior Court*, 205 Cal.App.2d 365, 373, 23 Cal.Rptr. 250 (1962). However, the determination of whether the privilege attaches is one of fact, and depends on the purpose underlying the preparation of a particular document.

> ... Where it is clear that a communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and not one related to the purpose, the question presented to the trial court is as to which purpose predominates ...

*Travelers Insurance Companies v. Superior Court*, 143 Cal.App.3d 436, 452, 191 Cal.Rptr. 871 (1983).

In light of the foregoing, this Court must then determine whether the documents which Metropolitan claims fall under this privilege are indeed protected.

■ This Court finds that all correspondence between Mr. Atchley and Metropolitan and between Metropolitan and Mr. and Mrs. Grassilli is privileged. This Court further finds that the recorded statements given by Mr. and Mrs. Grassilli to Metropolitan's claims representative are privileged.

The dominant purpose of the interviews was to preserve a detailed statement about the facts surrounding the accident. Since the statements were not taken until four months after the accident and only after an attorney representing Ms. Reavis had contacted Metropolitan, they clearly represent information which was intended to be transmitted to an attorney in light of the impending litigation. Such documents are therefore privileged.

The diary notes and other Metropolitan documents generated during the period of time the insured was represented by Mr. Atchley which clearly reflect oral or written communications between Mr. Atchley and Metropolitan are also privileged.

---

**3.** The documents relating to the defense of the present litigation were prepared in anticipation of litigation. Reavis has failed to show a substantial need for these documents. Further, the documents are protected under the attorney-client privilege.

Accordingly, the documents listed in Exhibit A, which is attached to this Court's Order, which documents are not communications from counsel nor do they clearly reflect communications from counsel and were not intended for transmittal to counsel during the course of professional employment, are discoverable.

## CONCLUSION

Upon due consideration of the parties' memoranda and the arguments advanced at hearing and upon reviewing *in camera* the documents submitted by Metropolitan and for the reasons set forth herein, this Court hereby grants in part Reavis' Motion to Compel Production of Documents as follows:

1. Those documents listed in Exhibit A, attached to this Court's Order are documents which are *not* privileged either under the work-product doctrine or the attorney-client privilege.

2. Metropolitan shall produce the documents listed in Exhibit A within 15 days of this Court's Order.

### EXHIBIT A
#### REGIONAL OFFICE FILE

| | DOCUMENT | (AUTHOR–RECIPIENT) | DATE |
|---|---|---|---|
| 1 | Claim Review Notes | (Dlugitch-File) | 12/12/83 |
| 2 | Diary Notes | (Dlugitch-File) | 11/21/83 |
| 3 | Claim Request | (Dlugitch-File) | 11/8/83 |
| 4 | Diary Note | (Dlugitch-File) | 11/8/83 |
| 5 | Expense Request | (Cofrancesco-File) | 10/6/83 |
| 6 | Annual Review Memo | (Cofrancesco-Dlugitch) | 10/6/83 |
| 7 | Claim Request and Diary Notes | (Dlugitch-File) | 10/4/83 |
| 8 | Diary Notes | (Dlugitch-File) | 10/4/83 |
| 50 | Claim Request | (Dlugitch-File) | 12/13/84 |
| 51 | Claim Review Note | (N.Thompson-Dlugitch) | 12/13/84 |
| 52 | p.2 of Diary Notes | (Dlugitch-File) | 12/5/84 |
| 53 | Claim Request | (Dlugitch-File) | 12/5/84 |
| 58 | Claim Request | (Dlugitch-File) | 11/8/84 |
| 62 | Claim Request | (Dlugitch-File) | 10/16/84 |
| 66 | Claim Request | (Dlugitch-File) | 9/26/84 |
| 67 | Claim Review Notes | (Gray-Dlugitch) | 9/26/84 |
| 69 | Claim Request | (Dlugitch-File) | 8/30/84 |
| 73 | Claim Request | (Dlugitch-File) | 8/17/84 |
| 81 | Claim Request | (Dlugitch-File) | 3/26/84 |
| 82 | Claim Review Notes | (Metropolitan-Dlugitch) | 2/17/84 |
| 83 | Claim Request | (Dlugitch-File) | 1/24/84 |
| 86 | Letter | (Dlugitch-Thompson) | 12/11/85 |
| 87 | Claim Request | (Dlugitch-File) | 12/9/85 |
| 90 | Claim Request | (Dlugitch-File) | 10/28/85 |
| 93 | Claim Request | (Dlugitch-File) | 10/15/85 |
| 95 | Letter | (Dlugitch-Thompson) | 10/9/85 |
| 96 | Claim Request | (Dlugitch-File) | 9/30/85 |
| 97 | Claim Request | (Dlugitch-File) | 10/8/85 |
| 98 | Authorization Request | (Dlugitch-Thompson) | 9/25/85 |
| 102 | Claim Request | (Dlugitch-File) | 8/27/85 |
| 103 | Letter | (B. Hamory-Cofrancesco) | 8/19/85 |
| 106 | Claim Request | (Cofrancesco-File) | 8/13/85 |
| 107 | Letter | (Cofrancesco-Hamory) | 8/15/85 |
| 109 | Letter | (Thompson-Dlugitch) | 8/15/85 |
| 110 | Letter | (Dlugitch-Thompson) | 8/12/85 |
| 111 | Claim Request | (Cofrancesco-File) | 8/5/85 |
| 113 | Claim Request | (Dlugitch-File) | 7/30/85 |
| 118 | Claim Request | (Dlugitch-File) | 6/24/85 |
| 121 | Diary Notes | (Dlugitch-File) | 6/20/85 |
| 122 | Claim Review Notes | (Cofrancesco-Dlugitch) | 6/19/85 |
| 126 | Claim Request | (Dlugitch-File) | 5/30/85 |
| 130 | Claim Request and Diary Notes | (Dlugitch-File) | 5/7/85 |
| 131 | Diary Notes | (Dlugitch-File) | 4/30/85 |
| 133 | Diary Notes | (Dlugitch-File) | 4/26/85 |
| 134 | Diary Notes | (Dlugitch-File) | 4/25/85 |
| 135 | Claim Request | (Dlugitch-File) | 4/17/85 |
| 137 | Claim Request and Diary Notes | (Dlugitch-File) | 4/15/85 |
| 138 | Diary Notes | (Dlugitch-File) | 4/9/85 |
| 139 | Claim Request and Diary Notes | (Dlugitch-File) | 3/22/85 |
| 140 | Diary Notes (p.1 only) | (Dlugitch-File) | 3/21/85 |
| 143 | Claim and Expense Request | (Dlugitch-File) | 3/14/85 |
| 145 | Claim Review Notes | (Cofrancesco-Dlugitch) | 2/20/85 |
| 146 | Diary Notes | (Dlugitch-File) | 2/5/85 |
| 149 | Claim Request and Diary Notes (p.1 only) | (Dlugitch-File) | 1/8/85 |
| 153 | Two Claim Requests | (Dlugitch-File) | 6/16/86 |
| 157 | Claim Request | (Dlugitch-File) | 3/28/86 |
| 160 | Claim Request | (Dlugitch-File) | 3/13/86 |
| 161 | Claim Request and Diary Notes | (Dlugitch-File) | 3/12/86 |
| 163 | Stop Payment Request | (Metropolitan-File) | 3/13/86 |
| 164 | Diary Notes | (Dlugitch-File) | 3/6/86 |
| 166 | Claim Expense Request | (Dlugitch-File) | 2/24/86 |
| 171 | Claim Request | (Dlugitch-File) | 2/11/86 |
| 172 | Credit Memo | (Metropolitan-File) | 3/14/86 |
| 174 | Claim Request | (Dlugitch-File) | 3/11/86 |
| 175 | Claim Request | (Dlugitch-File) | 3/6/86 |
| 176 | Claim Request | (Dlugitch-File) | 1/13/86 |
| 177 | Code Change Request | (Dlugitch-File) | 1/15/86 |
| 179 | Claim Request | (Dlugitch-File) | 1/13/86 |
| 180 | Expense Request | (Dlugitch-Thompson) | 1/3/86 |
| 182 | Claim Request | (Dlugitch-File) | 1/2/86 |
| 186 | Authorization Request | (Dlugitch-Thompson) | 1/9/86 |
| 187 | Authorization Request | (Dlugitch-Cofrancesco) | 3/22/85 |
| 188 | Payment Record | (Metropolitan-File) | None |
| 189 | Claimant Data Sheet | (Dlugitch-File) | 3/21/85 |
| 190 | Information Card re Faluela Reavis | (Metropolitan-None) | None |
| 191 | Claimant Data Sheet | (Dlugitch-File) | 3/21/85 |
| 203 | Cover Page | (S. Ely-Thompson) | None |

| DOCUMENT | (AUTHOR–RECIPIENT) | DATE |
|---|---|---|
| 205 Computer Printout | (Metropolitan-File) | None |

| DOCUMENT | (AUTHOR–RECIPIENT) | DATE |
|---|---|---|
| 157A H.O. Claim File Referral | (Cofrancesco) | 1/3/86 |
| 157B H.O. Claim File Referral | (H.O. Claims) | 2/13/86 |

## HOME OFFICE FILE

| DOCUMENT | (AUTHOR–RECIPIENT) | DATE |
|---|---|---|
| 2 Ledger | (Metropolitan-File) | 10/82–9/85 |
| 7 Claimant | (Dlugitch-File) | 3/21/85 |
| 8 Payment Record | (Metropolitan-File) | None |
| 9 Authorization Request | (Dlugitch-Cofrancesco) | 3/21/85 |
| 13 Claimant Data Sheet | (Dlugitch-File) | 3/21/85 |
| 17 File Review Notes | (Dlugitch-File) | None |
| 21 Claim File Referral | (Thompson-File) | 3/31/86 |
| 22 Letter | (Dlugitch-Thompson) | 3/31/86 |
| 23 Ledger | (Metropolitan-File) | 12/84–3/86 |
| 27 Diary Notes | (Dlugitch-File) | 3/12/86 |
| 28 Claim File Referral | (Thompson-File) | 3/11/86 |
| 32 Ledger | (Metropolitan-File) | 12/84–10/85 |
| 37 Claim File Referral Letter | (Cofrancesco-File) | 12/10/85 |
| 38 Letter | (Dlugitch-Thompson) | 12/11/85 |
| 40 Claim File Referral Letter | (Cofrancesco-File) | 10/29/85 |
| 44 Claim File Referral Letter | (Metropolitan-File) | 10/9/85 |
| 45 Letter | (Dlugitch-Thompson) | 10/9/85 |
| 46 Expense Request | (Thompson-File) | 9/23/85 |
| 47 Claim File Referral Letter | (Metropolitan-File) | 9/23/85 |
| 48 Ledger | (Metropolitan-File) | 12/84–8/85 |
| 50 Claim File Referral | (Thompson-File) | 8/29/85 |
| 54 Letter | (Hamory-Cofrancesco) | 8/19/85 |
| 55 New Referral Memo | (Cofrancesco-File) | 8/15/85 |
| 56 Home Office Referral Letter | (Cofrancesco-Hamory) | 8/15/85 |
| 57 Letter | (Thompson-Dlugitch) | 8/15/85 |
| 58 New Home Office Referral Letter | (Dlugitch-Thompson) | 8/12/85 |
| 64 Diary Notes | (Dlugitch-File) | 6/20/85 |
| 65 Claim Review Sheet | (Cofrancesco-Dlugitch) | 6/19/85 |
| 73 Diary Notes | (Dlugitch-File) | 5/7/85 |
| 74 Diary Notes | (Dlugitch-File) | 4/30/85 |
| 76 Summary of Settlement | (Dlugitch-File) | 4/26/85 |
| 77 Diary Notes | (Dlugitch-File) | 4/25/85 |
| 78 Diary Notes | (Dlugitch-File) | 4/15/85 |
| 79 Diary Notes | (Dlugitch-File) | 4/9/85 |
| 80 Summary of Settlement | (Dlugitch-File) | 3/22/85 |
| 81 Diary Notes (p.2 only) | (Dlugitch-File) | 3/21/85 |
| 84 Claim Review Notes | (Cofrancesco-Dlugitch) | 2/20/85 |
| 85 Diary Notes | (Dlugitch-File) | 2/5/85 |
| 88 Diary Notes (p.1 only) | (Dlugitch-File) | 1/8/85 |
| 92 Claim Review Notes | (Thompson-Dlugitch) | 12/13/84 |
| 93 Diary Notes (pp.1&2 only) | (Dlugitch-File) | 12/5/84 |
| 105 Claim Review Notes | (Metropolitan-Dlugitch) | 9/26/84 |