Mary **HARTMAN**, Plaintiff,

v.

Clara **BANKS** and Nationwide Insurance Co., Defendants.

Civ. A. No. 93–3344.

United States District Court, E.D. Pennsylvania.

Nov. 7, 1995.

Michael B.L. Hepps, Schwartzman & Hepps, Philadelphia, PA, for plaintiff.

Paul A. Bechtel, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Michael P. Geleta, Law Offices of Gordon J. Scopinich, Philadelphia, PA, for defendant Clara Banks.

William L. Banton, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, George A. Prutting, Jr., Fitchett & Prutting, P.A., Philadelphia, PA, for defendant Nationwide Ins. Co.

## OPINION

LOUIS H. POLLAK, District Judge.

I have been called upon once again to resolve a discovery dispute between counsel for plaintiff Mary Hartman and counsel for defendant Nationwide Insurance Company. The case arises from a car accident involving Hartman and defendant Clara Banks. As originally filed on June 22, 1993, the complaint alleged a claim only against Banks. An amended complaint was filed on September 14, 1993, which added a second claim, the claim that is relevant to the present dispute, against Nationwide, the insurer of Hartman's vehicle. The amended complaint alleges that soon after the original complaint was filed, Tim Bachman, Nationwide's adjuster assigned to handle Hartman's claim, made a phone call to Hartman's employer threatening to expose him to criminal liability; Hartman alleges that this threat was made in order to pressure Hartman, who is either mentally retarded or borderline mentally retarded, into accepting an inadequate settlement. Hartman's allegation of bad faith in Nationwide's handling of Hartman's claim is framed as the tort of intentional infliction of emotional distress.

Plaintiff has sought production from Nationwide of its file on Hartman's claim. Plaintiff has stated that her purpose for seeking production of this file is that it may shed light on the manner in which Nationwide handled Hartman's claim, including whether Bachman's alleged threat to Hartman's employer was known to and condoned in by other Nationwide officials. These facts may be relevant to the intentional infliction claim, which requires proof that the defendant's conduct was "extreme and outrageous." Restatement (Second) of Torts § 46 (1965). Nationwide, however, has refused to produce the documents in its file, citing attorney-client privilege and attorney work-product privilege. On May 24, 1995, plaintiff moved to compel Nationwide to produce the file in question. In a memorandum and order filed on July 26, 1995, I granted plaintiff's motion in part and denied it in part. In that memorandum, I concluded that Nationwide had not satisfied the dictates of Rule 26(b)(5) of the Federal Rules of Civil Procedure, which provides that a party who resists discovery on the basis of privilege must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Nationwide had provided only minimal descriptions of the documents it refused to produce; the list provided by Nationwide of the 164 pages of documents in its file described most of the

documents as inter-office memoranda and gave the court no reason for concluding that the documents are privileged. Several documents, however, were described as letters from Nationwide's counsel, George A. Prutting; although Nationwide did not further describe these documents, I concluded that the attorney-client privilege probably protected their disclosure. I ordered Nationwide to turn over to plaintiff all other documents in its file. The order included one caveat: "As provided by Rule 26(b)(3) of the Federal Rules of Civil Procedure, defendant may redact those portions of the documents that involve 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.' "

Following the issuance of the July 26 order, Nationwide produced the requested documents. In a display of considerable chutzpah, however, Nationwide took the opportunity offered by the above-quoted caveat and redacted every bit of substantive information contained in the thirty-odd pages of these documents. Thus, the redacted versions of the inter-office memoranda contain the date a memorandum was sent, the name of the author of the memorandum, and the name of the intended recipient, but all other information contained in the memoranda has been blacked out. Similarly, the claim log sheets contain the dates on which entries were made in plaintiff's file but the substance of the entries has been almost entirely blacked out. Predictably, plaintiff has submitted a new motion, characterizing the defendant's compliance with this court's order as amounting, as it were, to a *redactio ad absurdum*. Plaintiff's motion seeks an order that Nationwide produce all the documents without redaction. It also seeks sanctions against Nationwide for failing to comply with this court's order. Responding to plaintiff's motion, Nationwide filed a cross-motion for a protective order, asserting once again that the redacted documents are privileged.

■ As discussed in this court's July 11 memorandum, discovery is governed by Fed. R.Civ.P. 26. Rule 26(b)(3) states the attorney work product rule:

(3) **Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Under this rule, the privilege for attorney work product protects materials prepared in anticipation of litigation. The privilege is not absolute—it can be overcome by a showing of "substantial need" in conjunction with a showing that the "substantial equivalent" of the requested materials is unavailable. Even when such a showing has been made, however, a court must take care to protect from discovery "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

■ The requirement that an attorney's mental impressions, conclusions, opinions, and theories should not ordinarily be discoverable has led courts to distinguish between "ordinary work product" and "opinion work product." *See Sporck v. Peil*, 759 F.2d 312 (3d Cir.1985); *Frazier v. SEPTA*, 161 F.R.D. 309 (E.D.Pa.1995). Opinion work product includes "such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses." *Sporck*, 759 F.2d at 316. Unlike ordinary work product, which covers all other materials prepared in anticipation of trial and which is discoverable upon a show-

ing of substantial need and the unavailability of substantial equivalents, opinion work product is usually not subject to discovery at all. Yet an exception exists even for this category—opinion work product can be discovered in cases in which the opinions of an attorney or his agent are themselves at issue. *See* Wright & Miller, Federal Practice and Procedure § 2026 (supp.1994) ("Documents that would otherwise be protected must be produced if the knowledge, mental impressions, opinions, and advice of a lawyer or law firm are at issue in a litigation to which the lawyer or law firm is a party.").

In *Reavis v. Metropolitan Property and Liability Insurance Co.,* 117 F.R.D. 160 (S.D.Cal.1987), a case strikingly similar to the present one, the opinions of insurance company officials were held to be at issue and thus discoverable. That case arose, as does the present one, from a car accident in which the plaintiff was injured. She then filed a claim with Metropolitan, the driver's insurer. After she received an arbitration award, the plaintiff sued Metropolitan for its allegedly bad faith handling of her claim. As part of this suit, the plaintiff sought production of Metropolitan's entire file on her claim. Metropolitan resisted discovery on the grounds of attorney work product and attorney-client privileges. The court held that Metropolitan was required to turn over most of the material in the file:

> Reavis' lawsuit alleges bad faith on the part of Metropolitan by failing to promptly investigate and process her claim and failing to act in good faith in reaching a prompt and equitable settlement. The tort of bad faith goes to the reasonableness of Metropolitan's handling of Reavis' claim. It is apparent that the claims files contain a detailed history of how Metropolitan processed and considered Reavis' claim; under these circumstances, the documents are certainly relevant to the issues raised in Reavis' action.

> Although Reavis may be able to depose the insurance adjusters and other claims representatives who handled the claim, this may not be the substantial equivalent of the documentation contained in the claims files.

117 F.R.D. at 164. The *Reavis* court then quoted from *Brown v. Superior Court,* 670 P.2d 725, 734 (Ariz.1983), which stated:

> ... The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this [bad faith] the need for the information in the file is not only substantial but overwhelming. The "substantial equivalent" of this material cannot be obtained through other means of discovery. The claims file "diary" is not only likely to lead to evidence but to be very important evidence on the issue of whether Continental acted reasonably.

117 F.R.D. at 164 (internal citations omitted).

After considering the decision in *Reavis,* and having examined what little remains after redaction of the documents Nationwide was ordered to produce, I conclude that plaintiff's motion should be granted in part. Hartman's intentional infliction of emotional distress claim against Nationwide depends in part on proof of the mental state of Nationwide officials—whether they had the requisite intent to cause Hartman emotional injury. Thus, the opinions and mental impressions of Nationwide's officials in handling the negligence claim are directly at issue. In order to substantiate the allegation of intentional infliction, Hartman must prove that Nationwide officials engaged in extreme and outrageous behavior in handling the negligence claim. The file kept by Nationwide may well contain crucial evidence on the central issues in the case—the state of mind and behavior of Nationwide officials. I therefore conclude that Nationwide must produce all documents in its file that reflect its handling of Hartman's original complaint, including the mental impressions and opinions of Nationwide agents, even if these opinions were prepared in anticipation of litigation.

This is not to say, however, that Nationwide must turn over the entire file. Documents that reveal the opinions of Nationwide's agents in handling the original complaint—the negligence claim against Banks—must be produced. In contrast, Nationwide's handling of the second amended complaint, in which Hartman

added Nationwide as a defendant, is not at issue. Thus, Nationwide need not produce documents that reveal its mental impressions or opinions in its handling of the complaint made by Hartman against Nationwide. This distinction leads me to conclude that Nationwide must produce all documents that were written before Nationwide officials were alerted to the fact that Hartman would sue Nationwide for its handling of the original complaint. The amended complaint was filed on September 14, 1993. It appears, however, that Nationwide first learned that it would be sued by Hartman on August 2, 1993.[1] Thus, Nationwide must produce all documents in its file that predate August 2, 1993, when Nationwide first learned that it was being added as a defendant in Hartman's suit.

■ In addition to seeking unredacted copies of the requested documents, plaintiff has also requested that this court order Nationwide to pay $1000 for plaintiff's costs in preparing this motion. Fed.R.Civ.P. 37(a)(4) provides the relevant rule:

> [I]f the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure without the court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Under this rule, a court can order a party that resisted discovery to pay the other side's expenses unless (1) the movant did not first attempt to resolve the problem without court involvement, or (2) the resisting party had a

substantial justification for refusing to produce the requested materials. In the papers submitted by plaintiff in support of this motion, as well as those submitted in support of its prior motion to obtain the documents at issue, plaintiff's counsel demonstrated that it attempted to resolve this dispute between counsel without my involvement. Several letters and phone calls between counsel had apparently occurred over this dispute, which unfortunately, did not produce a resolution. I therefore find this requirement met. I further conclude that Nationwide has not produced a substantial justification for its refusal to produce the requested materials. Its decision to black out the substantive content of every documents this court ordered it to produce, although perhaps justified as to several documents, was not remotely justified as to all documents. For these reasons, plaintiff's request that Nationwide be ordered to pay its expenses will be granted.

■ Defendant has filed a cross-motion for a protective order under Fed.R.Civ.P. 26(c). This rule provides that a protective order may be issued when "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In its cross-motion, defendant complains that plaintiff "will continue to demand discovery documents—documents to which she is not entitled—*ad infinitum.*" Because of the conclusion above that plaintiff is indeed entitled to at least some of the documents at issue, I will deny defendant's motion. The multiple motions for discovery have arisen primarily because of defendant's own resistance. Moreover, in that the court has now drawn a bright-line rule as to what materials in Nationwide's files are discoverable—those created prior to August 2, 1993—it is my sincere expectation that this dispute is now fully resolved. Further squabbling over discovery in this case will be greeted with great disfavor.

---

1. There is one page from Nationwide's log sheet on which all entries have been redacted save one handwritten line: "8/2/93 Rec'd call and subsequent FAX naming NW as add'l ..." I interpret this somewhat cryptic note as stating that on August 2, 1993, Nationwide was informed that it was being named as a defendant in Hartman's case.