# CIRCUIT COURT OF THE CITY OF NORFOLK

Maureen Chevalier-Seawell

v.

Edwin David Mangum

August 3, 2015

Case No. CL14-2789

BY JUDGE MARY JANE HALL

This post-trial motion by Plaintiff seeks an award of interest, fees, and expenses against Allstate, her uninsured/underinsured motorist liability carrier, for its failure to act in good faith regarding the settlement of her case. The parties have previously battled over Allstate's motion to quash Plaintiff's subpoena *duces tecum* for the documents in Allstate's claim file. The Court overruled that motion to quash on May 7, 2015, as to documents other than those protected by a claim of privilege and ordered that Allstate prepare a privilege log describing any documents withheld from production. The Court rejected Allstate's subsequent motion to reconsider that ruling. Allstate has provided a privilege log listing 43 documents that it has withheld from production pursuant to Rule 1:4(b)(6) of the Rules of the Supreme Court of Virginia. It has produced no documents relevant to its handling or evaluation of Plaintiff's claim or its reasons for failing to settle. The parties appeared on July 30, 2015, before the Court on Plaintiff's motion to compel and motion for sanctions.

For the reasons stated herein, the Court grants Plaintiff's motion to compel and reserves ruling on the motion for sanctions. Allstate is ordered to provide the documents listed on page 11 of this Order to Plaintiff's counsel and ordered to submit all remaining documents listed on the privilege log to the Court for an *in camera* review. The Court reserves its ruling of Plaintiff's motion to award post-trial damages pending the *in camera* review.

## Background

Plaintiff sued to recover damages for injuries she sustained in an automobile accident. Defendant was insured by a liability policy with limits of $100,000. Plaintiff also served Allstate Insurance Company, her underinsured motorist (UIM) carrier, which had a policy limit of $250,000. Defendant admitted liability for Plaintiff's injuries before trial.

On March 11, 2015, three weeks prior to the trial date, Plaintiff filed this motion to award damages post-verdict. The motion recited that Defendant had admitted liability for the collision; that there was no dispute that Plaintiff had sustained a traumatic brain injury; that Defendant's insurance carrier had offered its full coverage of $100,000; that the stipulated special damages exceeded $63,000; and that Allstate had made absolutely no offer to settle the case. Supplemental pleadings recite that Allstate did make a settlement offer five days before trial, after Plaintiff had been required to depose the defense doctor at her expense and arrange for her own physician to come to trial. That initial offer was $50,000, increased to $55,000, and finally increased again the day before trial to $75,000.

The parties tried this case to a jury on April 2, 2015. Allstate did not appear at trial. The evidence established that Plaintiff sustained a mild traumatic brain injury and, as a result, suffered cognitive problems, memory loss, severe headaches, balance difficulties, and personality changes. Her treating physician and the defense Rule 4:10 examining physician agreed that the accident caused her injuries. The defense examining physician opined that her injuries lasted only one year, based largely on a note in the treating physician's chart. Plaintiff's treating physician testified otherwise and opined that the injuries were permanent. The Court instructed the jury that Defendant had admitted liability and they, therefore, were to determine damages only. Jury Instruction No. 1. The jury returned a verdict for Plaintiff for $800,000. The Court entered judgment on this verdict on May 7, 2015, and retained jurisdiction over the case pending resolution of the issues now before the Court.

## Discussion

### A. *Va. Code § 8.01-66.1 and Pre-trial Failure To Act in Good Faith*

The parties contest the availability of a remedy under Va. Code § 8.01-66.1(D)(1) against a UIM insurer for failure to act in good faith prior to trial. This particular issue remains somewhat of a novel one in Virginia.

The statute provides:

> Whenever a court of proper jurisdiction finds that an insurance company licensed in this Commonwealth to write insurance as defined in § 38.2-124 denies, refuses, or fails to pay

to its insured a claim of more than \$3,500 in excess of the deductible, if any, under the provisions of a policy of motor vehicle insurance issued by such company to the insured and it is subsequently found by the judge of a court of proper jurisdiction that such denial, refusal, or failure to pay was not made in good faith, the company shall be liable to the insured in the amount otherwise due and payable under the provisions of the insured's policy of motor vehicle insurance, plus interest on the amount due at double the rate provided in § 6.2-301 from the date that the claim was submitted to the insurer or its authorized agent, together with reasonable attorney's fees and expenses.

Va. Code § 8.01-66.1(D)(1).

In a discussion of subsection (A) of this statute, the Supreme Court of Virginia stated that "an insured's evidentiary burden under this remedial statute is the preponderance of the evidence standard." *Nationwide Mut. Ins. Co. v. St. John*, 259 Va. 71, 76 (2000). As a remedial statute, Va. Code § 8.01-66.1 must be "construed liberally, so as to suppress the mischief and advance the remedy, as the legislature intended." *Board of Supervisors v. King Land Corp.*, 238 Va. 97 (1989) (quoting *Shumate v. Commonwealth*, 56 Va. (15 Gratt.) 653, 661 (1860) (internal quotation marks omitted)).

The Virginia Supreme Court has not considered whether a UIM carrier may be liable under the statute for pre-trial bad faith. The obligation of the UIM carrier as set forth in Va. Code § 38.2-2206 is to "pay the insured all sums that he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits not less than the [legal requirement]." That Va. Code section does not suggest that the UIM carrier has a duty that arises before the insured recovers a judgment against the underinsured motorist. Several circuit courts, however, have ruled that § 8.01-66.1(D) "does provide a remedy for pre-trial bad faith behavior by insurance companies" handling UIM claims. *Copenhaver v. Davis*, 31 Va. Cir. 227, 227 (Louisa 1993); *accord Olson v. Allstate Ins. Co.*, 44 Va. Cir. 379 (Hampton 1998); *Ballard v. State Farm Mut. Aut. Ins. Co.*, 1997 Va. Cir. lexis 584 (Va. Beach 1997). The *Copenhaver* court reasoned:

A careful review of § 8.01-66.1(D)(1), its legislative history, and its interstatutory relationship, provides no indication of legislative intent to exclude under insurance contracts from the general provisions of the section.

*Copenhaver*, 29 Va. Cir. 121 (Louisa 1992). That Court wrote in a subsequent opinion that the statute creates a duty on insurers to act in good faith, and any other interpretation of the statute would render it "meaningless." *Copenhaver v. Davis*, 31 Va. Cir. 227 (Louisa 1993).

Mindful of the Virginia Supreme Court ruling that the statute is remedial and must be construed liberally, the Court concludes that *Copenhaver* and the other circuit court decisions cited above decided this issue correctly. Va. Code § 8.01-66.1(D)(1) does allow a circuit court to provide relief to an insured when she can prove that her UIM carrier failed to act in good faith relating to her claim before trial.

## B. *The Discovery Is Not beyond the Scope of Rule 4:1*

Allstate has claimed that this discovery is beyond the scope of the pleadings because the Complaint stated a claim only against the individual defendant (not Allstate) and related only to the automobile tort case. "Neither bad faith nor any contract claim has been pleaded in this case, and no discovery may be had on those subjects as part of this case." Allstate's Memo. of Points & Authorities, 5 (May 18, 2015). Allstate urges the Court to rule that Plaintiff must file a separate action in order to pursue her claim for bad faith.

The statute does not require an aggrieved insured to file a separate civil action against the insurer for relief; to the contrary, it allows relief "whenever a court of proper jurisdiction" finds that the insurer has refused to pay in bad faith. Va. Code § 8.01-66.1(D)(1). In *Nationwide v. St. John*, 259 Va. 71 (2000), the Virginia Supreme Court affirmed a decision by a trial court to award sums authorized by Va. Code § 8.01-66.1(A); and the trial court entered that order after the jury had returned its verdict: "Following discharge of the jury, the plaintiff moved the trial court to award double damages and reasonable attorney's fees and costs.... [T]he court granted the motion." 259 Va. at 79 (Compton, J., concurring). Admittedly, *Nationwide* did not address the permissibility of discovery relating to a post-verdict motion; but the Supreme Court did not disapprove of the trial court's consideration of the bad faith motion in the underlying case. Likewise, the *Copenhaver* circuit court decision, addressed above, arose out of a post-trial motion for relief filed in the underlying automobile case and not a separate civil action.

The statutory remedy under Va. Code § 8.01-66.1 provides a sanction, and trial courts routinely hear sanctions motions as part of the case in which the questioned conduct took place. Plaintiff pleaded her bad faith claim by motion filed on March 11, 2015. Trial courts have discretion to permit discovery relating only to a motion. With no authority requiring that insureds pursue their claims for bad faith separately, the Court finds no merit in Allstate's complaints that the discovery is beyond the scope of Rule 4:1.

## C. *Work Product Privilege and Bad Faith Claims against UIM Carriers*

Allstate has not yet furnished documents from its claim file that would shed any light on whether it acted in good faith when it failed to enter into settlement negotiations until just before trial, after Plaintiff had incurred expenses relating to the deposition of the defense physician and bringing her own treating physician to trial.

In the privilege log identifying the withheld documents, Allstate impliedly relied on the attorney-client privilege and work product doctrine, with reference to its attorneys or communications with counsel in almost every entry, *e.g.*, "3/13/2015: Notes and recommendations — created based in part on attorney reports" and "3/10/2015 Adjuster evaluation notes created based in part on attorney reports." Plaintiff argues that she needs the documents in the claims file to determine why Allstate handled her claim the way it did and that there are no opportunities for her to obtain the substantial equivalent of the materials by other means.

Rule 4:1(b)(3) states the general rule governing discovery of work product:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Virginia Supreme Court Rule 4:1(b)(6) permits a party to withhold otherwise discoverable information that is confidential or privileged, provided that party submits a privilege log with descriptions sufficient to enable others to assess the applicability of the privilege.

The Court has located only one Virginia case addressing the availability of the work product doctrine and attorney-client privilege to an insurance company defending a bad faith claim by its insured. In *Luthman v. GEICO*, 40 Va. Cir. 404 (Fairfax 1996), the Fairfax Circuit Court permitted discovery of an insurer's file, holding that the plaintiff had made a showing of substantial need and that no substantial equivalent of the materials otherwise was available. *Id.* at 405. The court rejected the insurer's work

product privilege claims, reasoning that "opinions and impressions of the defendants' agents and attorneys are directly at issue in determining whether the defendants acted in bad faith." *Id.* at 406. The Court also held that the insurer had waived its attorney-client privilege by asserting as a defense to the claim the advice of counsel, a fact not present in the instant case. *Id.*

The *Luthman* court relied on *Hartman v. Banks*, 164 F.R.D. 167 (E.D. Pa. 1995), and *Reavis v. Metropolitan Property & Liability Ins. Co.*, 117 F.R.D. 160 (S.D. Cal. 1987), both decisions that permitted discovery of opinion work product based on the plaintiffs' substantial need for those materials to prove the insurer's bad faith. The *Reavis* court conducted an *in camera* review of the insurer's documents and did not require disclosure of privileged communications to or from counsel. 117 F.R.D. at 165-66.

Given the scarcity of Virginia case authority on these issues, the Court has examined decisions from other states regarding the applicability of the work product doctrine and attorney-client privilege in a bad faith action. Arizona permits discovery of the entire claims file, reasoning that "bad-faith actions against an insurer ... can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered, and why the company took the action it did." *Brown v. Superior Court*, 137 Ariz. 327 (1983). The Arizona Supreme Court described the claims file as "a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this, the need for the information in the file is not only substantial, but overwhelming." *Id.* Because the insurance company in *Brown* did not assert the attorney-client privilege, that court did not reach the issue.

Florida also allows an insured to discover claims information that might otherwise be protected as work product. *See Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1129-30 (Fla. 2005) ("[A]ll materials ... contained in the underlying claim and related litigation file material that was created up to ... the date of resolution of the underlying disputed matter and pertaining ... to coverage, benefits, liability, or damages should ... be produced in a ... bad faith action.").

The United States District Court for the District of Montana has ruled that a plaintiff in a first-party bad faith action was entitled to discover the entire claims file kept by the insurer: "Under ordinary circumstances, a first-party bad faith claim can be proved only by showing the manner in which the claim was processed, and the claims file contains the sole source of much of the needed information." *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699, 699 (D. Mont. 1986).

The Court is satisfied that Plaintiff has a substantial need for Allstate's underlying claim file showing how her claim was adjusted and that she is unable to obtain by other means the substantial equivalent of those documents. Accordingly, all such materials other than those protected by the attorney-client privilege must be produced.

## D. *Applicability of the Attorney-Client Privilege to These Documents*

Virginia law recognizes that "[c]onfidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment are privileged from disclosure[.]" *Commonwealth v. Edwards*, 235 Va. 499 (1988) (internal quotation marks and citations omitted). Because the privilege is an exception to the general rule of disclosure, "an obstacle to investigation of the truth," it must be strictly construed. *Id.* at 509. Furthermore, the attorney-client privilege does not attach to a document merely because a client delivers it to an attorney or vice versa. *See Va. Elec. & Power Co. v. Westmoreland-LG&E Partners*, 259 Va. 319 (2000). For the privilege to apply, the communication must be made for the purpose of "procuring or providing legal advice." *SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.*, 2011 U.S. Dist. lexis 115535, 2011 at *4 (W.D. Va. Oct. 6, 2011 (*citing Henson v. Wyeth Labs., Inc.*, 118 F.R.D. 584, 587 (W.D. Va. 1987)); *see also Burton v. R. J. Reynolds Tobacco, Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997) ("Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice").

In *Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 380 (W.D. Va. 2012), the court ruled: "Accordingly, where a communication neither requests nor expresses legal advice, but rather involves the soliciting or giving of business advice, it is not protected by the privilege. The communication must be with an attorney for the express purpose of securing legal advice." *Id.* (*citing Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976)). "For the attorney-client privilege to apply, the communication 'must be primarily or predominately of a legal character'." *ABB Kent-Taylor, Inc.*, 172 F.R.D. 53, 55 (W.D. N.Y. 1996) (citations omitted); *see also Henson*, 118 F.R.D. at 587 (holding that the communication must be for the primary purpose of soliciting legal, rather than business, advice).

The burden is on the claimant of the privilege "to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived." *Edwards*, 370 S.E.2d at 301. "Parties seeking to challenge a claim of privilege have sparse information at their disposal. Because they do not actually have access to the privileged documents, they must rely on the opposing party's description of them in the privilege log. Accordingly, the descriptions in the log must satisfy the claiming party's burden." *ePlus, Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252 (E.D. Va. 2012) (*quoting Rambus, Inc. v. Infineon Techs., AG.*, 220 F.R.D. 264, 272 (E.D. Va. 2004).

The Privilege Log prepared by Allstate describes many documents that are plainly not communications between attorney and client for the purpose of procuring or providing legal advice. For example, "6. Adjuster evaluation notes created based in part on attorney reports" does not

describe a communication to or from an attorney created for the primary purpose of soliciting legal advice. Allstate argues in its Memorandum filed July 29, 2015, with no citation to authority, "the privilege protects the direct communications, and documents and opinions created using these communications, and the privilege protects reports, analysis, and conclusions based on the attorneys' impressions, thoughts, and analysis." Memo. at 3. The Court finds that this declaration does not accurately recite Virginia law regarding the attorney-client privilege.

Accordingly, the motion to compel is granted with respect to items on the Privilege Log that are not communications to or from counsel, specifically: Items 1, 2, 3, 5, 6, 8, 10, 11, 13, 15, 16, 19, 26, and 43.

Many of the emails described in the privilege log suggest that they are not related to legal advice but to the insurer's business of valuing and paying settlement claims, e.g., "27. 3/27/15 email from Stanley to Zaleski on settlement authority." Communication from an insurance adjuster providing settlement authority to trial counsel is not the solicitation of legal advice. The description furnished by counsel does not support the claim of privilege as to that document. In an abundance of caution, however, because it is a communication between Allstate and its lawyer, the Court will not order production of the remaining items listed on the Privilege Log at this time and instead orders that those materials be produced for *in camera* review by the Court. Any such documents that are not communications made for the primary purpose of securing or providing *legal* advice, as contrasted with the investigation and adjustment of a claim that represents a regular business function in the insurance industry and can be done by individuals not licensed to practice law, will not be deemed privileged.

### Conclusion

In summary, the Court grants Plaintiff's motion to compel and orders that the documents enumerated above be produced to Plaintiff within two weeks. The Court orders that the remaining documents listed on the Privilege Log be produced to the Court for an *in camera* review within two weeks. The Court reserves ruling on Plaintiff's Motion for Sanctions.