IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JASON C. POWELL, ESQ., | : | |
| As personal representative of the | : | |
| ESTATE OF MARK KRIEGER, | : | |
| | : | |
| Plaintiff, | : | C.A. No. K17C-11-003 JJC |
| | : | In and for Kent County |
| v. | : | |
| | : | |
| AMGUARD INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Submitted: April 26, 2019
Decided: May 14, 2019

***Upon Defendant's Motion for Reconsideration of a Commissioner's Order:
DENIED***

John S. Spadaro, Esquire, John Sheehan Spadaro, LLC, Smyrna, Delaware, Attorney for Plaintiff.

Thaddeus J. Weaver, Esquire, Dilworth Paxson, LLP, Wilmington, Delaware, Attorney for Defendant.

**Clark, J.**

Defendant AmGUARD Insurance Company ("AmGUARD") moves for reconsideration of a commissioner's order that compelled it to produce forty-one defense medical examination (hereinafter "DME") reports involving unrelated claimants. In this bad faith insurance litigation, the commissioner's order compelling production of these reports was not clearly erroneous, contrary to law, or an abuse of discretion. Accordingly, AmGUARD's motion for reconsideration is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts for this discovery motion include those alleged in the amended complaint and those facts of record identified by the parties in their original motion, response, and motion for reconsideration. As alleged, Mr. Krieger[1] suffered a May 20, 2017 work-related accident. AmGUARD insured Mr. Krieger's employer and provided workers' compensation coverage for his injury.

Mr. Krieger alleged that AmGUARD unjustifiably delayed paying him benefits after his injury, thereby breaching its insurance contract in bad faith. For purposes of this motion, the Court accepts that Mr. Krieger promptly claimed benefits and that AmGUARD delayed paying them for approximately four months before it made its first payment on October 2, 2017.

While Mr. Krieger awaited payment, AmGUARD sent him to Dr. Robert Smith on August 29, 2017 for a DME. Dr. Smith then issued a report opining that Mr. Krieger suffered a crush injury to his foot, and that the injury was directly related to the work incident. Dr. Smith's DME report also provided that Mr. Krieger's lost wages and medical expenses were reasonable, necessary, and related to the incident.

---

[1] Mr. Krieger passed away after he filed suit. His estate is now substituted as the plaintiff.

Furthermore, he offered the opinion that Mr. Krieger had been fit to return to light duty work as of July 1, 2017. Finally, Dr. Smith opined that Mr. Krieger could return to full duty when confirmatory imaging demonstrated that his fracture and bone bruise had healed. Thirty-three days after Dr. Smith's examination and report, AmGUARD issued its first check and continued to pay him until it learned of his death in 2018.

In November 2017, Mr. Krieger sued AmGUARD alleging two modes of wrongful conduct. First, Mr. Krieger alleged that AmGUARD failed to timely pay him wage replacement benefits as required by 19 *Del. C.* § 2324. Second, he alleged that it unjustifiably delayed paying his covered medical expenses within the thirty days required by 19 *Del. C.* § 2322F. He alleged that AmGUARD acted in bad faith as to both charges, and his amended complaint sought punitive damages.

In the litigation to date, Mr. Krieger's estate has gathered and produced to AmGUARD eighty-two DME reports authored by Dr. Smith for other carriers involving other claimants. When producing the reports to AmGUARD, the estate proferred that Dr. Smith, in all but one of the reports, provided opinions supporting the insurance carriers' positions to the detriment of their insureds. The estate then requested AmGUARD to produce all Dr. Smith reports in *its* possession from the three years prior to Mr. Krieger's claim. AmGUARD objected and the estate filed a motion to compel.

At the conclusion of a lengthy oral argument, the commissioner required AmGUARD to identify the number of reports Dr. Smith had provided to AmGUARD over the three years before Mr. Krieger's DME. AmGUARD then identified forty-one such reports while maintaining its objection to producing them.

After considering the written submissions and oral argument, the commissioner issued a letter order (hereinafter "the order") requiring AmGUARD to produce the forty-one Dr. Smith reports. The commissioner also required

3

AmGUARD to redact all dates of birth, social security numbers, and other personal identifying information from the reports before producing them pursuant to a confidentiality agreement.

Thereafter, AmGUARD filed a timely motion for reconsideration of the commissioner's order. The Court reviewed the transcript of the oral argument, all written submissions, and held oral argument on the matter on April 26, 2019.

## ARGUMENTS OF THE PARTIES

First, AmGUARD argues that the commissioner applied the improper legal standard. It relies upon the order's lack of reference to Superior Court Civil Rule 26(b)(1)'s standard that requires discovery to be relevant to the subject matter involved and that it be "reasonably calculated to lead to the discovery of admissible evidence." In this regard, AmGUARD emphasizes the commissioner's recitation in the order that she felt "it unlikely that under the facts of this case that the reports would be relevant at trial [but that there] *may* possibly be something in the reports that *may* be relevant to proving the Plaintiff's case."[2]

Second, AmGUARD argues that the amended complaint alleges only that the company delayed paying benefits. AmGUARD asserts that these delays, as alleged, were independent of Dr. Smith's DME opinion. Accordingly, it alleges that the order constituted an abuse of discretion because the DME reports are not relevant to the subject matter in the pending action. Because the estate alleges only unjustified delays in payment, AmGUARD argues that DME reports addressing different claimants are not relevant to this bad faith claim, and that a request for them is not reasonably calculated to lead to the discovery of admissible evidence.

---

[2] Commissioner's Letter Order, March 22, 2019, p. 1 (emphasis in original).

Mr. Krieger's estate counters that the reports are relevant to show Dr. Smith's bias. Furthermore, the estate argues that AmGUARD's other allegedly bad conduct (hiring a DME doctor who automatically recommends denying benefits) is separately relevant to demonstrate AmGUARD's state of mind regarding unfair dealing. The estate emphasizes that in this bad faith claim, it must show an "I don't care attitude." It argues that AmGUARD's choice to send Mr. Krieger to Dr. Smith is relevant to its overall state of mind, which the estate must prove at trial. Finally, the estate argues that these state of mind issues are separately relevant because a jury will be asked, when determining the amount of punitive damages, to determine how much AmGUARD "does not care."

## STANDARD OF REVIEW

In either case-dispositive or non-case-dispositive matters, a "party may serve and file written objections to the Commissioner's order which set forth with particularity the basis for the objections."[3] In this case, AmGUARD's motion challenges the commissioner's decision regarding a non-case-dispositive matter. Pursuant to Superior Court Civil Rule 132(a)(3)(iv) the Court may reconsider a commissioner's decision regarding such a matter "only where it has been shown on the record that the Commissioner's order is based upon findings of fact that are clearly erroneous, . . . is contrary to law, or is an abuse of discretion." This deferential standard of review does not permit a reviewing judge to substitute his or her judgment for that of the commissioner, absent one of the three referenced infirmities.

With regard to the standard applicable to discovery disputes, Delaware Superior Court Civil Rule 26(b)(1) (hereinafter the "Rule") addresses general scope

---

[3] Super. Ct. Civ. R. 132(a)(3)(ii).

and limits.  Absent privilege, "[p]arties may obtain discovery regarding any matter . . . which is relevant to the subject matter involved in the pending action."[4] Furthermore, the Rule provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears to be reasonably calculated to lead to the discovery of admissible evidence."[5]

## ALTHOUGH THE COMMISSIONER DID NOT CITE THE GENERAL DISCOVERY STANDARD IN HER ORDER, SHE CORRECTLY APPLIED IT IN HER DECISION.

AmGUARD's claim that the commissioner applied the incorrect legal standard is an issue of law that must be reviewed *de novo*.[6]  Here, the commissioner issued a brief letter order.  In her order, she provided

> [i]nitially, I note that I tend to agree with the Defendant that it is unlikely that under the facts of this case that the reports would be relevant at trial.  However, the standard for discovery is low and given the fact that this is a bad faith claim I can envision that there *may* possibly be something in the reports that *may* be relevant to proving the Plaintiff's case.   For that reason, I am granting the Plaintiff's Motion to Compel and ordering that the reports be produced subject to the Confidentiality Agreement referenced by Plaintiff's counsel.[7]

Rather than evidencing a misunderstanding of the scope of civil discovery, the above-quoted language represents the commissioner's application of the Rule. While the she did not recite the Rule, a review of the argument and her letter order demonstrates that she understood and applied the proper standard.  Although she qualified aspects of her decision by expressing doubt regarding admissibility of the

---

[4] Super. Ct. Civ. R. 26(B)(1).
[5] *Id*.
[6] *See Doe v. Cahill*, 884 A.2d 451, 454-55 (Del. 2005) (recognizing this premise in the context of a Supreme Court appeal of a Superior Court decision).
[7] Commissioner's Letter Order, March 22, 2019, p. 1-2 (emphasis in original).

6

reports at trial, her order recognized that this case involves alleged bad faith. Presumed within this recognition is her recognition of the relevance of the state of mind of the alleged bad faith actor.

The Delaware Court of Chancery, when examining its Rule 26, has used similar language to that used by the commissioner in this case. Namely, it has recognized that "relevancy must be viewed liberally *and if there is any possibility that the discovery will lead to relevant evidence* it should be permitted."[8] The scope of discovery has been consistently described by Delaware courts as "broad and far reaching."[9]

The commissioner's recognition that there *may* be something relevant in these forty-one DME reports that would either be admissible or lead to the discovery of admissible evidence is not inconsistent with the correct standard. The Rule requires that discovery be *reasonably calculated* to lead to the discovery of admissible evidence. On balance, this aspect of the Rule, in conjunction with its recognition that the items sought need not be admissible at trial, requires a primarily subjective analysis of the requestor's purpose.

Here, AmGUARD focuses too greatly on the commissioner's doubts that the DME reports will be relevant at trial. In doing so, it incorrectly assumes that seeking the reports must be reasonably *likely* to lead to the discovery of admissible evidence. The request need not. Rather, the Rule requires that it be reasonably *calculated* to

---

[8] *Loretto Literary & Benevolent Inst. v. Blue Diamond Coal Co.,* 1980 WL 268060, at *4 (Del. Ch. Oct. 24, 1980). *See also Incyte Corp. v. Flexus Biosciences, Inc.*, 2017 WL 5128979, at *4 (Del. Super. Oct. 27, 2017) (explaining that information sought in discovery is considered relevant "if there is any possibility that the information sought may be relevant to the subject matter of the action") (citations omitted) *and National Union Fire. Ins. of Pittsburg, PA v. Stauffer Chemical Co.*, 1990 WL 177572, at *3 (Del. Super. Nov. 9, 1990) (stating that the "requirement of relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms") (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2008 (3d ed. 1998)).

[9] *Woodstock v. Wolf Creek Surgeons, P.a.*, 2017 WL 3727019, at *6 (Del. Super. Aug. 30, 2017).

do so.  Here, the commissioner applied the correct standard and did not commit an error of law.

## THE COMMISSIONER DID NOT ABUSE HER DISCRETION WHEN ORDERING PRODUCTION OF THE FORTY-ONE DR. SMITH AUTHORED DME REPORTS.

This was a discovery related motion and there were no defined findings of fact.  Accordingly, AmGUARD does not claim that her findings were clearly erroneous.  AmGUARD, however, argues that the commissioner abused her discretion.  Reviewing her exercise of discretion begins with examining the estate's proffer that the DME reports are relevant to a bad faith claim against AmGUARD to (1) show bias, and (2) to demonstrate AmGUARD's state of mind.

As to both bias and state of mind, the Court acknowledges logic in AmGUARD's argument that because it did not rely upon Dr. Smith's report to deny the claim, the DME reports are not relevant to the subject matter in this case.  In a strictly transactional sense, Dr. Smith's bias would have very marginal relevance at best to the subject matter involving AmGUARD's delay in payment where Dr. Smith recommended that AmGUARD pay the benefits.   Under the circumstances of this case, the Court also acknowledges that the DME reports may not be admissible at trial regarding AmGUARD's state of mind.

Nevertheless, in applying general discovery standards, given the possibility that AmGUARD will rely on the timing and nature of Dr. Smith's opinion in its defense, ordering production of these DME reports because they are relevant to show bias was not an abuse of discretion.  At this stage, neither party need commit to whether they intend to offer Dr. Smith's testimony at trial.  This Court has previously held that "the language and purpose of [the] Rule dictate that evidence used solely

for impeachment purposes is discoverable."[10]   Mr. Krieger's estate proffers that all but one of the eighty-two Dr. Smith reports it has in hand were unfavorable to insureds.  Given that background, seeking Dr. Smith's DME reports prepared for AmGUARD over a limited period of time is reasonably calculated to lead to the discovery of impeachment material.

As to the estate's second proffered reason for seeking discovery, the commissioner did not abuse her discretion when finding that the DME reports could be relevant when proving a bad faith claim.  A bad faith claim against an insurer is available when an insurer has no "reasonable justification" for denying a claim or delaying payment.[11]   The relevance of the DME reports for discovery purposes turns primarily on the estate's allegations that AmGUARD's bad faith conduct warrants punitive damages.   A finding of bad faith alone by the trier of fact would not alone justify an award of punitive damages.  To justify a punitive damages award, "the denial of the coverage [must be] willful or malicious … [and] the bad faith actions of an insurer [must be] taken with reckless indifference or malice toward the plight of the [insured]."[12]  Accordingly, absent a summary disposition, the trier of fact will need to assess AmGUARD's subjective state of mind to determine if punitive damages are warranted.

In evaluating relevance to the subject matter at issue, the language relied upon by our Delaware Supreme Court in *Tackett v. State Farm* best defines the subject matter of a bad faith insurance action.  Namely, the Supreme Court recognized in that decision that

---

[10] *Id.*

[11] *Tackett v. State Farm Fire & Casualty*, 558 A.2d 1098, 1103 (Del. Super. 1988), *aff'd*, 653 A.2d 254 (Del. 1995) (citing *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 369 (Del. Super. 1982)).

[12] *Pierce v. International Ins. Co. of Ill.*, 671 A.2d 1361, 1367 (Del. 1996).

9

[t]he penal aspect and public policy considerations which justify the imposition of punitive damages require that they be imposed only after a close examination of whether the defendant's conduct is "outrageous," because of "evil motive" or "reckless indifference to the rights of others." . . . Mere inadvertence, mistake or errors of judgment which constitute mere negligence will not suffice. It is not enough that a decision be wrong. It must result from a conscious indifference to the decision's foreseeable effect.[13]

Given this definition of the subject matter of the pending action, the Court must determine what is relevant to such an action. Relevant evidence is any evidence that makes a matter of consequence more or less probable.[14] The threshold for relevance for admissibility at trial is low.[15] For discovery purposes, if there is "any possibility that the information sought may be relevant to the subject matter of the action," discovery is considered relevant.[16]

Here, Mr. Krieger's estate alleges AmGUARD had an improper motive when selecting Dr. Smith to perform Mr. Krieger's DME. The estate has eighty-two other Dr. Smith authored DME reports in hand and represents that only one of them was unfavorable to an insurance carrier.[17] Under the estate's theory of the case, AmGUARD's selection of Dr. Smith as a DME doctor may be relevant in showing AmGUARD's state of mind related to unfair dealing. For instance, if AmGUARD were shown to have selected Dr. Smith to perform a DME intending that he help to unjustifiably deny the claim, AmGUARD more likely had an "I don't care attitude"

---

[13] *Tacket v. State Farm Fire & Casualty Ins., Co.,* 653 A.2d 254, 265 (Del. 1995) (quoting *Jardel v. Hughes,* 523 A.2d 518, 529 (Del. 1987) and Restatement (Second) of Torts § 908, cmt. b (1979) (citations omitted))

[14] D.R.E. 401.

[15] *Wilgus v. Bayhealth Medical Center, Inc.*, 2018 WL 3814591, at *3 (Del. Super. Aug. 10, 2018).

[16] *Incyte*, 2017 WL 5128979, at *4.

[17] The Court recognizes that there is no indication that these eight-two reports, with one favorable opinion to an insured, represent a valid sampling. Nevertheless, proffering such information at the discovery stage supports the estate's argument that seeking the forty-one reports is reasonably calculated to lead to the discovery of admissible evidence.

when it delayed payments. In that case, any delay in payment was also more likely to be not accidental or merely negligent. Furthermore, if that were the case, AmGUARD's alleged delay in paying Mr. Krieger's claim would be more likely willful.

In advocating their positions, both parties spent considerable effort arguing the strengths of their case which was not helpful at this stage. As to ultimate trial admissibility, the Court recognizes that character evidence is inadmissible in civil proceedings.[18] On the other hand, a plaintiff asserting a bad faith claim must prove the subjective state of mind of an insurance carrier. Given that reality, prohibiting discovery concerning other alleged bad acts would unfairly limit a party's ability to develop his or her case.

Delaware Rule of Evidence 404(b) recognizes circumstances where other allegedly wrongful acts are admissible for limited purposes other than for proving character. For instance, such matters may be admissible for the limited purposes of proving motive, intent, plan, absence of mistake, or lack of accident.[19] Ultimately, whether or not such evidence will be admissible at trial on DRE 404(b) grounds will need to be determined after considering the *Getz* factors on a developed record.[20] Included within that analysis are Delaware Rule of Evidence 403 concerns designed to make sure the "side show does not take over the circus."[21] The Court makes no decisions regarding admissibility at this stage and addresses these rules of trial

---

[18] *See Brett v. Berkowitz*, 706 A.2d 509, 516 (Del. 1998) (explaining that "Rule 404(b) allows for the admissibility of 'other wrongs or acts' in civil cases only for purposes *other* than to show propensity").

[19] D.R.E. 404(b).

[20] *See Mercedes-Benz v. Norman Gershman's Things to Wear, Inc.,* 596 A.2d 1358, 1365 (Del. 1991) (holding that "[w]hile *Getz's* guidelines were developed for criminal proceedings and specifically related to 'other crimes,' they have analogous application to the admissibility of 'other wrongs and acts' in civil cases…").

[21] 1 Kenneth S. Brown et al., *McCormick on Evidence* § 39 (7th ed. 2013).

evidence in the discovery context only for purposes of illustrating relevance to the subject matter of this case.

The Court considered the case law cited and relied upon by both parties. Initially, Mr. Krieger's estate cited cases ordering production of DME reports and responses to DME related interrogatories in bad faith insurance litigation. With one exception, those case decisions compelled discovery involving unrelated DMEs and record reviews where the alleged bad faith conduct involved denials of benefits based upon DMEs or record reviews.[22] Mr. Krieger's estate argues that those cases broadly support that DME reports referencing other claimants are discoverable in bad faith actions. AmGUARD counters that those cases involve denials of benefits based upon DMEs or record reviews and therefore provide that that such material should be produced only when a carrier based its denial on a DME or record review. On balance, they do not specifically address the issue at hand, are not mandatory authority, and do not present discovery issues similar enough to guide the Court's decision.

One case cited by the parties warrants individual discussion because it involves production of a broad range of materials. In *Saldi v. Paul Revere Life Insurance Co.*,[23] the Eastern Federal District of Pennsylvania articulated a specific rule applicable to discovery in bad faith insurance litigation. Here, the general scope provisions in Delaware's Rule controls the disposition of this motion without the

---

[22] *See Ridgaway v. Bender*, 2004 WL 2050283, at *1-5 (Del. Super. Sep. 14, 2004) (holding that plaintiffs could compel defendants to disclose the number of medical exams conducted by the defendant's doctor, the number of medical exams the doctor conducted for defendant's firm and the doctor's compensation); *Schran v. Allstate Fire and Cas. Ins. Co.*, 2014 WL 12600170, at *1-4 (W.D. Pa. Jan. 9, 2014) (permitting inquiry through interrogatories into Allstate's use and compensation of a peer review organization that denied plaintiff's claim); *and Bright v. Ohio Nat'l Life Assurance Corp.*, 2011 WL 13130908, at *1-6 (N.D. Okla. Oct. 20, 2011) (compelling defendants to identify all claims reviewed by their medical examiner over a seven-year period, including discovery of "whether [each] claim was ultimately denied in whole or in part").
[23] 224 F.R.D. 169 (E.D. Pa. 2004).

need for a specific rule applicable only to bad faith litigation. Nevertheless, because both parties at oral argument suggested that the Court apply the *Saldi* court's standard in the present case, the Court will address it.

In *Saldi*, the parties disputed whether a plaintiff suing an insurer for bad faith should be permitted broad national discovery regarding claims handling in other states.[24] The discovery sought and permitted in that case was extremely broad. The plaintiff sought materials relevant to "a national pattern and practice to boost corporate profitability by terminating valid disability benefits for pretextual reasons."[25] The Eastern District of Pennsylvania held that "for any evidence of [an insurer's] actions outside of the instant case to be relevant and potentially admissible in the instant case, there must be some nexus or connection between those actions and the instant case."[26] The allegedly wrongful conduct of the insurer in that case was, unlike the delay in payment of benefits in this case, multi-faceted and encompassed several allegedly pretextual actions.[27] In recognizing the nature of a bad faith/unfair dealing claim, the *Saldi* court compelled discovery regarding a broad range of national adjustment practices, policy decisions, claims handling, and record review investigations.[28] In these areas, that court found a sufficient nexus between the claims at issue and other allegedly wrongful conduct by the insurer.[29] In permitting this broad discovery, the *Saldi* court recognized a plaintiff's substantial burden in a bad faith claim to show the intentional or reckless behavior of the insurer, while negating the possibility of mere negligence.[30]

---

[24] *Id*. at 175.
[25] *Id.* at 173.
[26] *Id*. at 177-78.
[27] *Id*. at 172-74.
[28] *Id.* at 175-94.
[29] *Id.*
[30] *Id.* at 177.

For the same reasons the Court discussed *supra* regarding (1) Dr. Smith's bias, and (2) state of mind issues, the commissioner did not abuse her discretion in light of the Eastern District of Pennsylvania's standard. Here, as in *Saldi*, there is a sufficient nexus between the DMEs sought and the estate's bad faith claims to justify the commissioner's order. In this regard, the *Saldi* bad faith litigation specific rule is subsumed within the general scope and limits of Rule 26(b)(1). The Court therefore declines to adopt a separately articulated rule for bad faith claims. A court must find a logical nexus between the items sought and the subject matter of the claims when undertaking *any* discovery review.

As a final matter, the commissioner did not abuse her discretion when she first required AmGUARD to identify the number of reports at issue. Such an approach was a reasonable method designed to ensure that the discovery was "not unduly burdensome or expensive." Given a court's need to limit discovery when the Rule so requires, requiring AmGUARD to first identify the burden in answering the discovery was reasonable.

## CONCLUSION

For the reasons discussed, the commissioner did not commit legal error or abuse her discretion when ordering AmGUARD to produce the forty-one DME reports with the qualifications provided in her order. Accordingly, AmGUARD's motion for reconsideration is **DENIED**.

**IT IS SO ORDERED**.

/s/Jeffrey J Clark
Judge

JJC:jb
*Via File & Serve Xpress*

14